STATE OF MINNESOTA
POLLUTION CONTROL AGENCY

OAH Docket No. 6-2200-15413-2

In the Matter of Gary Bailey—MPCA Section 401 Certification

**STATEMENT OF ISSUE, FINDINGS OF FACT, CONCLUSIONS AND ORDER**

The above-entitled matter came on for hearing before Administrative Law Judge ("ALJ") Allan W. Klein on July 23, 24, and 25, 2003. The hearing record closed September 4, 2003, and the ALJ's Findings of Fact, Conclusions and Recommendation were finalized October 3, 2003, (hereinafter "ALJ's Report"). The ALJ's Report (copy attached) was sent to the parties and submitted to the Commissioner of the Minnesota Pollution Control Agency Sheryl Corrigan (hereinafter "Commissioner" and "MPCA") to issue a final decision and order. The parties were given an opportunity to file exceptions and present argument regarding the ALJ's Report pursuant to Minn. Stat. § 14.61, subd. 1 (2003). The parties also were notified as required by Minn. Stat. § 14.61, subd. 2 (2002) that the record would and officially did close on November 21, 2003.

The issue before the ALJ was whether it was appropriate and consistent with Minn. R. 7001.0140, for the MPCA to have revoked the Section 401 Certification previously issued to Gary Bailey in connection with construction of a road and the development of a residential subdivision along the southern shore of Lake of the Woods. The Commissioner has authority to decide revocations of Section 401 certifications because it is not within the specific authorities of the MPCA Citizens Board, Minn. Stat. § 116.02, subd. 6 (2002). Furthermore, no party requested the matter to be decided by the Board as authorized under Minn. Stat. § 116.02,

subd. 8 (2002). The parties were notified of their right to request the Board to make the final decision as required by Minn. Stat. § 116.02, subd. 9 (2002).

In accordance with Minn. Stat. § 14.61 (2002) parties may have no less than ten days after receipt of the ALJ's Report to file exceptions or comments to the Commissioner related to the ALJ's Report. The Commissioner is required to consider the exceptions or comments before making a final decision. The Commissioner received exceptions to the ALJ's Report from the MPCA Staff Hearing Team. No exceptions were filed by Gary Bailey. As the final decisionmaker, the Commissioner may adopt, reject, or modify the ALJ's Report in whole or in part.

Having afforded the parties an opportunity to present exceptions or argument on the ALJ's Report, having considered the exceptions and all the evidence in the administrative record herein, the ALJ's Report, and being fully advised in the premises, the Commissioner hereby adopts and issues the following:

## FINDINGS OF FACT AND CONCLUSIONS

1. The Commissioner adopts the Statement of Issue contained in the ALJ's Report.

2. The Commissioner adopts the Findings of Fact contained in the ALJ's Report except for the additional findings and amendments to the ALJ's findings as set forth below.

3. The ALJ's Finding 3 is amended to read as follows:

> A former county government official estimated there was one-hundred thousand acres of Type 7 wetlands (e.g., forested wetland) in the county. Walter Leu believed that Type 3 or Type 4 wetlands were the "really important" ones, the ones worth identifying and protecting and, when possible, creating. Type 7 wetlands, on the other hand, were less important and if they could be drained or otherwise made suitable for lots or other economic development, he thought that was a good use for them. Currently, federal and state statutes, regulations and rules afford various protections to wetlands, including protections provided by mitigative sequence procedures.

4. Koschak Test., Tr. 354. The last transcript citation in footnote 13 of the ALJ's Finding 5 is amended to read as follows: . . . and Koschak Test. Tr. 354, 359.

5. The ALJ's Finding 6 is amended to read as follows:

> There is no evidence to suggest that a drainage system as suggested by Lockner was ever built or even engineered. Under MPCA's individual sewage treatment system (ISTS) rules, the soil absorption areas for new standard mound systems would not be allowed in fill areas or in areas where the mound system's upper 12-inch unsaturated soil requirement of the soil absorption area is created by man-made manipulation, such as artificial or man-made drainage systems. The county acknowledged that because of the high water table in the Sunny Beach plat, septic systems would not likely be permitted further from the lakeshore than Lockner's 100-foot corridor estimate due to the lack of natural draw-down of the water table by the lake beyond Lockner's estimated 100-foot distance. Several of the lots in the Sunny Beach plat that were sold were cleared and in eight lots, fill was placed on them. They are now subject to Restoration Orders issued under the Minnesota Wetland Conservation Act (WCA).

6. Footnote 26 (including the cite to Finding 6) of the ALJ's Finding 8 is amended to read as follows:

> But the ditches were not deep enough to show draw down in the 100 foot corridor areas that Lockner had identified as suitable for mound septic systems in his October 14, 1999, letter to MPCA. Wespetal Test., Tr. 537-45; *see* Findings 17 and 24. Lockner's lake draw-down theory was not supported by the COE and NRCS experts' field observations or by Wespetal's soils analysis. *See* Finding 24; Wespetal Test., Tr. 537-45.

7. The ALJ's Report is amended by adding a new finding (Finding 38) that reads as follows:

> Gary Bailey was the only applicant for the Section 401 certification for the Sunny Beach project. In addition, Gary Bailey was the only Section 401 certificate holder. There is no record evidence that Gary Bailey or any other person or entity applied to the MPCA for modification of the MPCA-issued Section 401 certification to add or transfer the certificate in regard to an alternation of the ownership or control of the Sunny Beach project, including the road.

8. The MPCA Commissioner adopts the ALJ's Conclusions except for additions and amendments set forth below.

9. The ALJ's Report is amended by adding a new Conclusion 2A that reads as follows:

The MPCA has the legal authority to make Section 401 certification decisions, including a revocation decision, in this matter notwithstanding the county's plat decision. MPCA's Section 401 authority, including its authority to make a certificate revocation determination, is not pre-empted, supplanted or limited by the county plat decision.

10. The ALJ's Conclusion 3 is amended to read as follows:

The agency may revoke a Section 401 certification upon making any of the findings in Minn. R. 7001.0140, subp. 2. The issue in this proceeding was whether the MPCA could make any of the findings in Minn. R. 7001.0140, subps. 2.A., 2.C. or 2.D. in regard to the Section 401 certification revocation. The agency must apply Minn. R. 7001.1400 in applying Minn. R. 7001.0140 to the processing of Section 401 certification decisions. Accordingly and as paraphrased below, the agency may revoke a Section 401 certification if it finds that any of the following conditions have been met:

A. That with respect to the facility or activity to be certified, the proposed certificate holder will not comply with all applicable state and federal pollution control statutes and rules administered by the agency, or conditions of the certification;

* * *

C. That the certificate holder has failed to disclose fully all facts relevant to the facility or activity to be certified, or that the certificate holder has submitted false or misleading information to the agency; or,

D. That the certified facility or activity endangers human health or the environment and that the danger cannot be removed by a modification of the conditions of the certification.

11. The ALJ's Conclusion 4 is amended to read as follows:

The agency has demonstrated, by a preponderance of the evidence, that Bailey will not comply with applicable rules or certificate conditions in that the WCA Replacement Plan was to be implemented by July 1, 2000, and Bailey failed to meet this deadline, and he now says that he will not do it. The rule, Minn. R. 7050.0186, subp. 6.D., requires compensatory mitigation before or concurrently with the actual physical alteration of the wetland. Minn. R. 7050.0186, subd. 6D. Bailey did not comply with this rule. MPCA's Section 401 certification had a condition that the compensatory mitigation in the WCA replacement plan had to be implemented to comply with Minn.

R. 7050.0186, subp. 6. Bailey did not implement the replacement plan and as a result, Bailey did not comply with the Section 401 certification condition.

In addition, the agency has demonstrated by a preponderance of the evidence that Bailey's failure to implement wetland mitigation means there are ongoing violations of MPCA's wetland nondegradation rules, including Minn. R. 7050.0185, subp. 9, Minn. R. 7050.0186, subp. 6.A. and Minn. R. 7050.0210, subp. 13a. The agency has also demonstrated by a preponderance of the evidence that Bailey's failure to implement wetland mitigation also means there are ongoing violations of MPCA's designated use water quality standards associated with the wetland classifications 2.D., 3.D., 4.C., 5 and 6.

12. The ALJ's Conclusion 5 is amended to read as follows:

The agency has demonstrated, by a preponderance of the evidence that Bailey has failed to disclose fully all facts relevant to the activity. He failed to disclose the extent of wetland and the extent of the impact. Information on these items was requested by the July 1999 request for information, but it was not supplied. In addition, the request for information asked Bailey for an explanation of how he was going to comply with the ISTS rule, which he failed to do. He failed to fully disclose the actual depths and draw down data concerning his ditches, which affects the amount of wetland compensation needed. He also failed to indicate that a significant potion of the plat is floodplain. Finally, he failed to disclose to MPCA that the WCA replacement plan would not be implemented, that the plan had not been implemented in accordance with the extended deadline of July 1, 2000, and that the plan was no longer valid.

15. The ALJ's Conclusion 6 is amended to read as follows:

The agency has proven, by a preponderance of the evidence, that the proposed Sunny Beach project endangers human health and the environment and that the danger cannot be eliminated by modifying the Section 401 certification. In particular, sewage is likely to be discharged without adequate treatment. This situation exists because there is no evidence of the existence of soil conditions at the Sunny Beach project site that comply with MPCA's individual sewage treatment system (ISTS) rules. The discharge of sewage without adequate treatment will create nuisance conditions and an imminent public health threat and violate other MPCA rules (e.g., Minn. R. 7050.0210, subps. 1-2, Minn. R. 7060.0600, subp. 2, Minn. R. 7080.0065, subp. 4). Even if compliant ISTS soils existed (they do not), several lots in the Sunny Beach plat do not have adequate area to comply with the two-standard ISTS system requirements of MPCA ISTS rules and MDNR shoreland regulations and these conditions endanger human health and the environment. In addition, the completion of the road and ditches, without adequate compensation, has harmed the environment, and has induced the clearing and filling of lots without appropriate permits or mitigation.

## ORDER

Based on the foregoing Conclusions, the Commissioner affirms MPCA's revocation of the Section 401 Certification issued to Gary Bailey.

This Order may be appealed to the Minnesota Court of Appeals in the manner provided in Minn. Stat. § 14.63 to Minn. Stat. § 14.69 (2002) if filed and served not more than 30 days after receipt of this Order.

## MEMORANDUM

The Commissioner, after review of the ALJ's Report, the contested case record, and the MPCA Hearing Team's Comments and Exceptions, agrees with ALJ's Recommendation that MPCA's revocation of the Section 401 Certification issued to Gary Bailey be affirmed. The Commissioner's amendments are intended to only clarify and supplement the ALJ's Findings and Conclusions. The rationale and record support for the Commissioner's amendments are documented in the MPCA Hearing Team's Comments and Exceptions to the ALJ's Report. The Commissioner's review of the administrative record and the Exceptions revealed that there is no need for the Commissioner to provide any additional record support or rationale for the amendments beyond that provided by the MPCA Hearing Team. The Commissioner adopts the rationale for the amendments as documented by the MPCA Hearing Team.

Dated: Jan 16, 2004.

MINNESOTA POLLUTION CONTROL AGENCY

Sheryl Corrigan
Commissioner

AG: #960128-v1