**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **GARY BAILEY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil No. 02-1078L** |
| **UNITED STATES OF AMERICA,** | ) | **Honorable Victor J. Wolski** |
| **Defendant.** | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT PURSUANT TO RCFC 56(h)(1)**

The Defendant, in support of its Motion for Summary Judgment Based Upon Background Principles of State Law, respectfully quests that the Court make the following findings of fact:

**A. Sunny Beach Subdivision**

1. In June, 1989, Plaintiff and his former wife, Kathryn Bailey, purchased approximately 206.15 acres of land in Lake of the Woods County, which included 13.2 acres of wooded property immediately adjacent to Lake of the Woods. *Bailey v. United States*, 78 Fed. Cl. 239, 241 (2007) ("*Bailey I*").

2. The 13.2 acres of property, which is commonly known as "Sunny Beach," was platted by Plaintiff as a residential subdivision containing 14 residential parcels. Complaint (Dkt. 1) ¶ IV.

3. To provide access to the individual lots, from the fall of 1998 through August, 1999, Plaintiff had a road constructed through Sunny Beach. *Bailey I*, 78 Fed. Cl. at 242-43.

4. At the time the road through Sunny Beach was installed, Plaintiff had not obtained the necessary authorizations to construct the road from the United States Army Corps of Engineers ("Corps of Engineers") or from the State of Minnesota. *Bailey I*, 78 Fed. Cl. at 243; Deposition of Gary Bailey ("Bailey Dep.") (Dec. 1, 2004), Ex. 16 (attached to Motion for Summary Judgment ("MSJ") as Ex. B).

5. In December 1998, Lake of the Woods County approved the plat for Sunny Beach. Complaint (Dkt. 1) ¶ IV; *Bailey I*, 78 Fed. Cl. at 242.

**B. Plaintiff's Application for a Section 401 Certification**

6. Before developing Sunny Beach for residential purposes, Plaintiff was required to obtain both a Section 404 permit from the United States Army Corps of Engineers ("Corps of Engineers"), as well as a Section 401 Certification from the Minnesota Pollution Control Agency ("MPCA").

7. The Minnesota Pollution Control Agency ("MPCA") has adopted rules to implement the Section 401 certification program. Minn. R. 7001.1400-1470 (2007).

8. Under MPCA's rules, it can issue a Section 401 Certification only if "there is [a] reasonable assurance that the activity will be conducted in a manner that will not violate applicable water quality standards." Minn. R. 7001.1400-1470, subp. 1.C (2007).

9. In August, 1998, the Corps of Engineers received an application for an after-the-fact Section 404 permit for the Road. Bailey Dep. (Dec. 1, 2004), Ex. 9 (attached to MSJ as Ex. E).

10. On June 24, 1999, the Corps of Engineers issued a public notice regarding Plaintiff's after-the-fact Section 404 permit application. Bailey Dep. (Dec. 1, 2004), Ex. 11 (attached hereto as Ex. G).

11. As a result of the public notice issued by the Corps of Engineers regarding Plaintiff's application for an after-the-fact Section 404 permit, the MPCA became aware of Plaintiff's Sunny Beach project. Testimony of Larry Zdon ("Zdon Test."), CCH Tr. 31-32 (attached to MSJ as Ex. H).

12. The MPCA treated the public notice as an application for a Section 401 Certification. Testimony of Larry Zdon ("Zdon Test."), CCH Tr. 31-32 (attached to MSJ as Ex. H).

13. Minnesota's review of health and safety issues concerning water quality and pollution related to proposed residential development, includes consideration of the specific type of septic system that may be installed to treat sewage under state law (Minn. Stat. Ann. § 115.07 (2008); Minn. R. ch. 7080.0170 (2007)), and the requirement that the property owner be able to install two separate standard septic systems (Minn. R. 7080.0305, subp. 4.F (2007); Minn. R. 6120.3500 subp. 3 (2007).

14. Upon receipt of an application for certification of the Sunny Beach development from Plaintiff, the MPCA had concerns regarding residential development at Sunny Beach because it was unclear whether individual sewage treatment systems could be installed on the property in compliance with MPCA's Individual Sewage Treatment System ("ISTS") rules. Minn. R. Chap. 7080; Zdon Test., CCH Tr. 36-37 (MSJ Ex. H).

15. To meet the health and safety requirements of Minnesota state law, septic systems require three feet of unsaturated soils in order to fulfill the two basic functions of an ISTS: sewage treatment and hydraulic performance. Testimony of Mark Wespetal ("Wespetal Test."), CCH Tr. 396-400 (MSJ Ex. H). A mound can be created to provide a portion of the three feet of unsaturated soil for a mound system, but even a mound system is required to have at least 12 inches of unsaturated original or natural soil in the absorption area. Zdon Test., CCH Tr. 63-64 (MSJ Ex. H); Wespetal Test., CCH Tr. 401-06 (MSJ Ex. H); Minn. R. 7080.0170, subp. 5.A.(2) (2007).

16. On December 19, 1999, the MPCA issued a Section 401 Certification to Plaintiff for the Sunny Beach project. Zdon Test., CCH Tr. 77 (MSJ Ex. H); ALJ's Report at ¶ 20 (MSJ Ex. A).

17. The initial granting of the Section 401 Certification was based upon representations made by local government officials indicating that the 100 feet of land closest to Lake of the Woods on each lot was not saturated and would support the installation of septic systems. ALJ's Report at ¶¶ 14-21 (MSJ Ex. A).

**C. Revocation of Plaintiff's Section 401 Certification**

18. The information provided by the local government officials regarding unsaturated soils on the Sunny Beach property later proved to be inaccurate. ALJ's Report at ¶ 24 (MSJ Ex. A).

19. In August, 2000, experts from the Corps of Engineers and the U.S. Department of Agriculture's Natural Resources Conservation Service ("NRCS") conducted a formal on-site

wetland delineation at Sunny Beach. *Bailey I*, 78 Fed. Cl. at 243; ALJ's Report at ¶ 23 (MSJ Ex. A).

20. The on-site investigation demonstrated the inaccuracy of the conclusion that the first 100-feet of land closest to Lake of the Woods was not saturated and could adequately support septic systems. ALJ's Report at ¶ 24 (MSJ Ex. A).

21. As a result of the new information and new analysis, the MPCA revoked Plaintiff's 401 Certification for the Sunny Beach subdivision on October 4, 2000. CCH Tr. Ex. 16 (attached to MSJ as Ex. J); *Bailey I*, 78 Fed. Cl. at 243.

**D. Plaintiff's Appeal of the Revocation of the Section 401 Certification**

22. Plaintiff appealed the MPCA's revocation of the Section 401 Certification through a contested case hearing, which was conducted by an Administrative Law Judge from the Minnesota Office of Administrative Hearings. ALJ's Report (MSJ Ex. A).

23. The MPCA's denial of a water quality certification for the Sunny Beach subdivision was based upon testimony at the CCH hearing, which demonstrated that:

a. The Sunny Beach subdivision is comprised almost exclusively of wetland soil, which is inadequate for the installation of septic systems. Wespetal Test., CCH Tr. 382-466 (MSJ Ex. H).

b. Soil analyses by Mark Wespetal, MPCA's chief ISTS expert and a licensed soil scientist, analyzed the soils at the transect locations identified in the Corps of Engineers' August 2000 wetlands delineation. None of the soils analyses showed soil adequate for standard mound septic systems. Wespetal Test., CCH Tr. 419, 426 (MSJ Ex. H).

c. Given the saturated soils in the Sunny Beach subdivision, mound septic systems would weep and seep untreated or partially treated sewage to the ground surface and nearby

ground and surface waters. Wespetal Test., CCH Tr. 406-07, 446-49 (MSJ Ex. H).

d. The soil conditions on the Sunny Beach property posed an imminent public health threat and could result in untreated pathogens entering the groundwater and nearby lake creating public health problems, if septic systems were to be installed. Wespetal Test., CCH Tr. 447-48 (MSJ Ex. H).

24. Under Minnesota law, several MPCA rules would be violated, including rules prohibiting sewage discharges to ground surface, and nuisance conditions would be created if residential development were permitted in the Sunny Beach subdivision. Wespetal Test., CCH Tr. 406-07, 449 (MSJ Ex. H).

25. Substantial portions of Sunny Beach is in the 100-year floodplain. Zdon Test., CCH Tr. 103-04 (MSJ Ex. H).

26. Both MPCA ISTS rules and the Minnesota Department of Natural Resources' shoreland rules require non-wetland area sufficient for two standard systems. Wespetal Test., CCH Tr. 428 (MSJ Ex. H).

27. This two-system requirement is needed because even well-designed, properly maintained septic systems have a finite life (e.g. 25-50 years before plugging occurs), so replacement land area is needed. Wespetal Test., CCH Tr. 428-29 (MSJ Ex. H).

28. Based upon the testimony of Mr. Wespetal – that six lots did not have sufficient area and that another four lots were very small and required additional site-specific investigation work to determine whether those four lots complied with the area requirement – the MPCA denied a water quality certification to Plaintiff. Wespetal Test., CCH Tr. 433-34 (MSJ Ex. H); MPCA Lot Size Assessment (MSJ Ex. K).

29. On October 3, 2003 the ALJ issued his findings of fact, conclusions and recommendation, in which he "recommended that the [MPCA's] revocation of the Section 401 Certification be affirmed." ALJ's Report at p. 15 (MSJ Ex. A).

30. On January 16, 2004, Sheryl Corrigan, Commissioner of the MPCA, issued a Statement of Issue, Findings of Fact and Order, in which she "agree[d] with the ALJ's Recommendation that MPCA's revocation of the Section 401 Certification issued to Gary Bailey be affirmed." Statement of Issue, Findings of Fact and Order ("Commissioner's Order"), p. 6 (attached to MSJ as Ex. L).

31. In upholding the MPCA's revocation of a water quality certification for the Sunny Beach subdivision, Commissioner Sheryl Corrigan found that:

> The [MPCA] has proven, by a preponderance of the evidence, that the proposed Sunny Beach project endangers human health and the environment that the danger cannot be eliminated by modifying the Section 401 certification. In particular, sewage is likely to be discharged without adequate treatment. This situation exists because there is no evidence of the existence of soil conditions at the Sunny Beach project site that comply with MPCA's individual sewage treatment system (ISTS) rules. The discharge of sewage without adequate treatment will create nuisance conditions and an imminent public health threat and violate other MPCA rules (e.g., Minn. R. 7050.0210, subps. 1-2, Minn. R. 7060.0600, sup. 2, Minn. R. 7080.0065, Subp. 4). Even if compliant ISTS soil existed (they do not), several lots in the Sunny Beach plat do not have adequate area to comply with the two-standard ISTS system requirements of MPCA ISTS rules and the MDNR shoreland regulations and these conditions endanger human health and the environment.

Commissioner's Order at ¶ 15 (MSJ Ex. L).

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

*/s/ James D. Gette*

JAMES D. GETTE
Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P.O. Box 663
Washington, DC 20044-0663
Tel: 202-305-1461
Fax: 202-305-0267
Email: james.gette@usdoj.gov

Of Counsel:

Steven P. Adamski
Deputy District Counsel
U.S. Army Corps of Engineers
St. Paul District
190 East 5th Street, Suite 401
St. Paul, Minnesota 55101