Case 0:05-cv-02245-PJS-RLE Document 171 Filed 03/31/2008 Page 1 of 15

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

GARY BAILEY,

Defendant.

GARY BAILEY,

Third-Party Plaintiff,

v.

LAKE OF THE WOODS COUNTY,

Third-Party Defendant.

Case No. 05-CV-2245 (PJS/RLE)

ORDER FOR JUDGMENT

Friedrich A.P. Siekert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Alan B. Fish, ALAN B. FISH, P.A., for defendant.

Scott T. Anderson, RATWIK ROSZAK & MALONEY, P.A., for third-party defendant.

In the summer of 1998, defendant Gary Bailey constructed a road on a parcel of wetland located in Lake of the Woods County, Minnesota ("the Site"), without obtaining a permit under Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344. In October 2001, the United States Army Corps of Engineers ("the Corps") issued a restoration order requiring Bailey to restore the wetland to its pre-violation condition. After Bailey refused to do so, the United States brought this action under Section 309(b) of the CWA, 33 U.S.C. § 1319(b), to require Bailey, "at his own expense and at the direction of the Corps, to restore the wetlands to their pre-

Received 3-31-08
Docketed ✓
Scanned
Client E-mailed ✓
Client U.S. Mail

violation condition in accordance with the Restoration Order dated October 22, 2001, issued by the Corps." Compl. ¶ 2.

On September 25, 2007, the Court granted in part the motion of the United States for summary judgment. The Court found that the Corps properly asserted jurisdiction over the Site under the CWA. The Court further held that, because "the Corps's restoration order [met] all of the requirements of [*United States v. Sexton Cove Estates, Inc.*, 526 F.2d 1293 (5th Cir. 1976)]," the Court would "enter an injunction requiring Bailey to comply with that order." Docket No. 148 at 35. The Court then ordered Bailey to submit a proposed restoration plan. After an unsuccessful attempt to appeal the Court's order, Bailey finally submitted a proposed plan. The United States objected to Bailey's proposal and submitted its own proposed restoration plan. Bailey then moved for a stay of the judgment to be entered in this case.

On March 12, 2008, the Court held a hearing on the parties' dispute over the content of the restoration plan, as well as on Bailey's motion for a stay. For the reasons stated in its September 25, 2007 order, and for the reasons that follow, the Court denies Bailey's motion for a stay and issues a final injunction requiring Bailey to restore the wetland that he unlawfully polluted nearly a decade ago.

*A. The Restoration Plan*

Before addressing the content of the final injunction to be entered in this case, the Court observes that the United States appears to have misunderstood the Court's September 25, 2007 order. In that order, the Court stated that it "will enter an injunction requiring Bailey to restore the Site, at his own expense, to its pre-violation condition *in accordance with the Restoration Order dated October 22, 2001* . . . ." Docket No. 148 at 39 (emphasis added). This Court's

order was consistent with the parties' positions during the summary-judgment proceedings. During those proceedings, the United States asked the Court to "order Bailey to restore the property *in accordance with the [October 22, 2001] Restoration Order*," Docket No. 78 at 44 (emphasis added), and all of the parties' arguments were directed to the propriety of enforcing that restoration order.

The October 22, 2001 restoration order is a one-page order with four numbered paragraphs listing the restoration work Bailey must perform at the Site. *See* Docket No. 161, Attach. A at COE0701. The United States now proposes a sixteen-page final injunction that goes well beyond the original restoration order. *See* Docket No. 162. The United States's new proposals include detailed requirements specifying how Bailey must perform the actual restoration work (such as the use of erosion-control barriers and the type and storage of the equipment Bailey must use) and also expands the scope of the work that Bailey must perform (by, for example, requiring Bailey to plant trees, perform soil ripping, and hand-cast and rake in the native grass seed). The United States also seeks to extend the time in which Bailey must undertake these activities: Whereas the Corps's original order requires Bailey to control weeds for three years following restoration, the United States's proposed order would require Bailey to control weeds for five years following restoration and would further require Bailey to submit monitoring reports for each of those five years.

In sum, after litigating the propriety of the original restoration order, and with no prior notice to Bailey or the Court, the United States is now asking the Court to dramatically expand the scope of the work that Bailey must undertake. The Court rejects, as both unwise and unfair, the United States's attempt to improve the original restoration order. The original order was the

product of notice-and-comment proceedings by the Corps — the agency with the expertise to determine what steps are necessary to restore the wetland. Bailey received proper notice of those proceedings and had a fair opportunity to develop a record and to have his views heard and considered. In this case, though, the United States gave Bailey (and the Court) no notice of the new requirements that it seeks to graft onto the original restoration order until long after discovery had closed and the Court had ruled on the parties' dispositive motions. The Court lacks the expertise to determine the propriety of these additional proposals in the first instance, and the United States has submitted no record evidence to aid the Court in responsibly exercising its judgment. Even if the United States had submitted such evidence, Bailey has had no opportunity to respond to it or submit his own evidence. In the main, therefore, the Court will limit the final injunction to requiring Bailey to comply with the original restoration order issued by the Corps.

That said, the Court will include in the final injunction a couple of the United States's new proposals, because those proposals, while not expanding the substance of the restoration order, will assist the Court in ensuring that its final injunction is obeyed. Specifically, the Court will order Bailey to conduct surveys of the Site both before he begins the restoration process and after he has completed earth-moving activities. The Court will also require Bailey to permit the United States reasonable access to the Site. Finally, the Court will clarify that, to comply with the restoration order, Bailey will have to remove the culverts and fill placed on the Site by others. The reasons for ordering Bailey to undertake these tasks are as follows:

*1. Surveys.* The restoration order requires Bailey to remove the unauthorized road, fill in the ditches, and reestablish the original contours of the wetland using the elevation of the

adjacent, undisturbed wetland as a reference. Given the history of this and related litigation, the Court fears that, at some point, the parties will dispute whether Bailey has complied with this aspect of the order. Land surveys will help to prevent such disputes and substantially assist the Court in resolving any such disputes that arise. Thus, under its inherent authority to ensure compliance with its injunctions, the Court will order Bailey, at his own expense, to conduct the surveys requested by the United States.

2. *Access*. Having issued a valid and enforceable restoration order, the United States has the right to ensure that Bailey complies with it. More importantly, this Court has the authority to ensure that its orders are obeyed. In the absence of any right of access to the Site, the United States will not be able to bring possible violations of the final injunction to the Court's attention. Thus, although the original restoration order does not explicitly require that the United States be given the right to visit the Site for the purpose of monitoring Bailey's compliance, the Court will grant a limited right of access to the United States, as specified in its order below.

3. *Culverts and Fill Placed by Others*. Bailey objects to the requirement in the United States's proposed order that he remove culverts and fill placed on the Site by others. Bailey contends that the original restoration order does not require him to remove those items and argues that the United States should be sanctioned for contending that he should remove them. If anyone should be sanctioned, it is Bailey. During the summary-judgment proceedings, Bailey stood before this Court and argued forcefully that the restoration order was inequitable precisely because it required him to remove culverts and fill placed on the Site by others. *See, e.g.*, Docket No. 99 at 27; Hr'g Tr. 101-04, May 2, 2007. The Court rejected Bailey's argument, finding that the culverts and fill in question were placed by innocent parties to whom Bailey sold

the lots without disclosing his lack of a proper permit for the road, that the culverts and fill would never have been placed on the Site in the absence of Bailey's knowing violation of the law, and that removing the culverts and fill was a de minimis burden on Bailey in light of his obligation to remove a quarter-mile road.

Bailey now excuses his about-face by claiming that he was so overcome by the eloquence of the United States's arguments during the summary-judgment proceedings that he neglected to carefully read the contents of the one-page restoration order — the order over which he has been litigating for about six years. Bailey's claim is not plausible. Because the parties have already fully litigated the issue of the culverts and fill placed on the Site by others, and because Bailey insisted before this Court that the restoration order *did* require him to remove those culverts and that fill, the Court stands by its earlier ruling that it is equitable, under *Sexton Cove*, to require Bailey to remove the culverts and fill in question.

*B. Bailey's Motion for a Stay of the Judgment*

Bailey asks the Court to stay its judgment until he has had an opportunity to complete the appellate process. A party seeking a stay pending appeal must show the following:

> (1) that it is likely to succeed on the merits; (2) that it will suffer irreparable injury unless the stay is granted; (3) that no substantial harm will come to other interested parties; and (4) that the stay will do no harm to the public interest.

*James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982) (per curiam).

1. Likelihood of Success on the Merits

This case presented two main questions: (1) Which test, of those articulated in the various opinions in *Rapanos v. United States*, 547 U.S. 715 (2006), should the Court apply to determine whether the Corps has jurisdiction over the Site under the CWA? and (2) Has the Corps met the applicable test(s)?

Both Bailey and the United States moved for summary judgment on these issues. In its September 25, 2007 order, the Court concluded that the Corps could establish CWA jurisdiction under *Rapanos* using *either* the test articulated in the plurality opinion *or* the test articulated in Justice Kennedy's opinion concurring in the judgment. The Court then found that the Corps had met Justice Kennedy's test and thus properly asserted jurisdiction over the Site.

To date, every federal court applying *Rapanos* — including the First, Seventh, Ninth, and Eleventh Circuits — has concluded that the Corps may assert CWA jurisdiction over a given site if the site meets Justice Kennedy's test. *See N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993, 999-1000 (9th Cir. 2007); *United States v. Robison*, 505 F.3d 1208, 1222 (11th Cir. 2007); *United States v. Johnson*, 467 F.3d 56, 66 (1st Cir. 2006); *United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 725 (7th Cir. 2006) (per curiam). Not a single court has accepted Bailey's argument that, if Justice Kennedy's test (but not the plurality's test) is met, no CWA jurisdiction

exists.[1] Given the unanimity of opinion in favor of applying Justice Kennedy's test, it is highly unlikely that Bailey will succeed in overturning this aspect of the Court's holding.

Under Justice Kennedy's test, CWA jurisdiction exists whenever there is a "significant nexus" between the wetland in question and navigable-in-fact waters — and, when the wetland is "adjacent" to the navigable-in-fact waters, a significant nexus exists as a matter of law. *Rapanos*, 547 U.S. at 779-80. In applying Justice Kennedy's test to the facts of this case, the Court held, essentially, that the Corps had presented competent and extensive expert evidence that the Site is situated in a wetland adjacent to navigable-in-fact waters (Lake of the Woods), whereas Bailey, who relied mainly on his own affidavit and presented no expert evidence of any kind, had failed to present any competent evidence to the contrary. No doubt Bailey took the calculated risk of submitting no real evidence regarding Justice Kennedy's test in the hope that the Court would agree with his argument that CWA jurisdiction exists only when the plurality's test is met. That was not a wise gamble, given that no federal court has yet agreed with Bailey's argument. In any event, though, given the Corp's substantial evidence that the wetland in

---

[1]As the Court noted in its September 25, 2007 order, the only possible exception to this substantial body of opinion in favor of applying Justice Kennedy's test is *United States v. Chevron Pipe Line Co.*, 437 F. Supp. 2d 605, 613 (N.D. Tex. 2006), in which the court appeared to assume that Justice Kennedy's test is controlling, but found that test so ambiguous that it resorted to pre-*Rapanos* circuit precedent for guidance. Since the Court issued its earlier opinion, the Court's research has uncovered only one case that appears to assume that the plurality's test is controlling. *See Natural Res. Def. Council v. Kempthorne*, 525 F. Supp. 2d 115, 124 n.11 (D.D.C. 2007). In denying the plaintiffs' motion for a preliminary injunction under various federal environmental statutes, *Kempthorne* cited the plurality's test when it observed, in a footnote, that the plaintiffs did not appear likely to prevail in establishing CWA jurisdiction. *Id.* But *Kempthorne* relied mainly on the fact that the plaintiffs had waived their CWA claims, and there is no indication that the issue of the proper test was before the court.

question is indeed adjacent to Lake of the Woods, and given the dearth of evidence to the contrary, Bailey is unlikely to prevail on appeal.

Finally, Bailey contends that, even if the Court's holding in favor of CWA jurisdiction is upheld, he is likely to succeed in reversing the Court's holding that the Corps's restoration order is equitable under the factors set forth in *Sexton Cove*. In particular, Bailey points to the lack of evidence regarding his financial resources. The reason for this lack of evidence, however, is that Bailey never contested that he has the financial wherewithal to remove the road, and he conceded that removing the road would probably not cost much more than it cost to construct the road. *See* Docket No. 148 at 29; Hr'g Tr. 66, May 2, 2007. Nor did Bailey offer evidence that the cost of removing the road would render removal impractical. Instead, as the Court noted in its September 25 order, the focus of Bailey's *Sexton Cove* analysis was his argument that it would be inequitable to require him, rather than Lake of the Woods County, to restore the wetland. But, as the Court has already found, Bailey knowingly violated the law and caused the environmental damage at issue. Bailey cannot now rely on his own failure to submit evidence of his financial condition to avoid responsibility for his conduct. Bailey is not likely to succeed in overturning this aspect of the Court's order.

2. Irreparable Injury

Bailey argues that he will suffer irreparable injury if he is forced to remove the road before a final adjudication on the merits of his appeal. At oral argument, the United States said that it is unaware of any right Bailey may have to recover against the United States in the event that Bailey prevails on appeal after having removed the road. Thus, Bailey appears to be correct that any financial injury he may suffer as a result of a legally erroneous order to remove the road

would be irreparable. But, as noted, Bailey conceded at oral argument that removal of the road will probably not cost much more than the original construction, for which the original bid was $10,000 (and which, at the most, cost about $20,000). Hr'g Tr. 65-66, May 2, 2007. In other words, although the harm suffered by Bailey would be irreparable, it would also be relatively modest. This factor therefore does not weigh heavily in Bailey's favor.

3. Harm to Others and the Public Interest

Bailey constructed the road ten years ago, in defiance of the explicit instructions of the Corps. Bailey has yet to take any action to mitigate the damage that he has caused. The public — especially the small community surrounding Lake of the Woods — may well question the value and purpose of federal environmental laws when knowing and blatant violations can go unremedied year after year after year. Moreover, it will take many years for the wetlands to repair themselves, and necessary restoration work has already been delayed for a decade. The sooner restoration is begun, the better for the public. These factors weigh against granting a stay.

4. Conclusion

Having considered the relevant factors, the Court is persuaded that a stay of the judgment is not warranted. It is true that, if Bailey ultimately prevails on appeal, he will suffer irreparable harm. But he has very little chance of prevailing on appeal, and the harm that he will suffer is relatively modest. At the same time, the public interest is clearly served by requiring Bailey to restore the wetlands this summer, before yet another growing season is lost.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The area to be restored ("the Restoration Area") is located in Section 21, Township 163 North, Range 33 West, Lake of the Woods County, Minnesota. Beginning at the north end of the subdivision, the Restoration Area measures approximately 1,370 feet in length by 66 feet in width. *See* App. 1. The Restoration Area also includes the areas on which culverts and fill material were placed to facilitate the construction of driveways. The Restoration Area excludes the southernmost 123-foot length of the road adjacent to lot 1 and the portion of lot 2 that was constructed in non-wetlands.

2. Defendant Gary Bailey is ORDERED to restore the Restoration Area, at his own expense, to its pre-violation condition in compliance with the October 22, 2001 Restoration Order issued by the Army Corps of Engineers ("the Corps") as follows:

   a. Defendant shall remove the unauthorized dredged and fill material placed for the extension of Sandy Shores Drive to an upland disposal site approved in advance by the Corps, except for that necessary to fill in the ditches as described in paragraph 2(c) below. The unauthorized dredged and fill material to be removed includes all driveway culverts and related fill material.

   b. Removal of the fill shall expose the native, loamy soils and reestablish the original, pre-construction contours of the wetland. Defendant shall use the

elevation of the adjacent, undisturbed wetlands as a reference for this purpose.

c. Defendant shall backfill the ditches associated with the unauthorized road in the Restoration Area with the native, loamy soils used to construct the road. Defendant shall reestablish the original, pre-construction contours of the wetland using the elevation of the adjacent, undisturbed wetlands as a reference. Defendant shall haul all excess fill material to an upland site approved in advance by the Corps.

d. Defendant shall begin the work described in paragraphs 2(a), 2(b), and 2(c) no later than June 15, 2008 and shall complete that work no later than August 15, 2008.

e. Defendant shall seed the Restoration Area between September 15, 2008 and October 15, 2008 with thirty pounds of seed mix per acre. The seed mix shall conform to the specifications in the following table, except that defendant may, with advance approval from the Corps, make substitutions in the mix:

| SEED MIXTURE FOR RESTORATION AREA | | |
|---|---|---|
| Common Name | Scientific Name | % of Mix |
| Virginia wild rye | *Elymus virginicus* | 30.0 |
| Annual rye grass | *Lolium italicum* | 20.0 |
| Fowl bluegrass | *Poa palustris* | 20.0 |
| Fringed brome grass | *Bromus ciliata* | 20.0 |
| Prairie cord-grass | *Spartina pectinata* | 6.0 |

| | | |
|---|---|---|
| Softstem bulrush | *Scirpus validus* | 2.0 |
| Green bulrush | *Scirpus atrovirens* | 0.5 |
| Canada bluejoint grass | *Calamagrostis canadensis* | 0.1 |
| Blue flag iris | *Iris virginica-shrevii* | 0.3 |
| Canada anemone | *Anemone canadensis* | 0.1 |
| Marsh milkweed | *Asclepias incarnata* | 0.2 |
| Great blue lobelia | *Lobelia siphilitica* | 0.1 |
| Goldenglow | *Rudbeckia laciniata* | 0.2 |
| Blue vervain | *Verbena hastata* | 0.2 |
| Joe-pye weed | *Eupatorium maculatum* | 0.3 |

f. During the years 2009, 2010, and 2011, defendant shall accomplish control of the following weed species through hand removal or spot application of an herbicide approved for wetland/aquatic use:

i. Reed canary grass (*Phalaris arundinacea*);

ii. Purple loosestrife (*Lythrum salicaria*);

iii. Common buckthorn (*Rhamnus cathartica*);

iv. Glossy buckthorn (*Rhamnus frangula*); and

v. Canada thistle (*Cirsium arvense*).

g. No later than May 15, 2008, defendant shall submit to plaintiff and the Court a surveyed site plan, developed by professional registered land surveyors, showing property boundaries, waterbodies, wetlands, and areas of unauthorized dredged or fill material. Elevation contours of six inches or one foot shall be mapped. The plan view scale shall be no less than 1 inch = 75 feet. The surveyed site plan shall include spot elevations in

undisturbed soil conditions on either side of the road corridor. The spot elevations shall total at least thirty (fifteen on each side of the road corridor, spaced approximately one hundred feet apart).

h. Within fifteen days of completing earth-moving activities, defendant shall submit to plaintiff and the Court an as-built survey, developed by professional registered land surveyors, that depicts the spot elevation grades of fifteen points within the Restoration Area at approximately one hundred foot intervals that match with the thirty spot elevation controls described in paragraph 2(g).

i. For the purpose of monitoring defendant's compliance with this order, defendant shall permit plaintiff to conduct three visits to the Restoration Area during 2008 and two visits per year in 2009, 2010, and 2011. During the visits, plaintiff may take reasonable measures and conduct reasonable tests to determine and document defendant's compliance, or lack thereof, with this order. Plaintiff must seek permission from the Court for any visits in excess of those expressly permitted by this order. Plaintiff shall provide defendant at least forty-eight hours' notice before any visit conducted pursuant to this order. Defendant or his representative may be present during any visit by plaintiff — if defendant or his representative is available when plaintiff chooses to visit — but must not interfere in any way with plaintiff's activities.

3. Defendant's motion to stay enforcement of judgment [Docket No. 167] is DENIED.

4. The Court shall retain jurisdiction over this action for the purpose of enforcing this order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 31, 2008

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge



T.163 N., R.33 W.
S COUNTY, MN.
FIGURE 1
AREA TO BE RESTORED
SANDY SHORES DRIVE
LAKE OF THE WOODS
GOV'T LOT 3
GOV'T LOT 4
14 42700 SQ.FT.
13 40600 SQ.FT.
12
11 37500 SQ.FT.
10 34500 SQ.FT.
9 33300 SQ.FT.
8 30200 SQ.FT.
7 30000 SQ.FT.
6 29400 SQ.FT.
5 29400 SQ.FT.
4 30000 SQ.FT.
3 30500 SQ.FT.
2 28500 SQ.FT.
1 33500 SQ.FT.
WATERS EDGE ON 10/7/98
100 YEAR FLOOD LINE ELEV. = 1064.0
ORDINARY HIGH WATER LINE ELEVATION = 1061.25
SCALE IN FEET
ALL DIMENSIONS ARE ±
ELEVATIONS ARE BASED ON THE NATIONAL GEODETIC VERTICAL DATUM OF 1929 (NGVD29) AND FROM THE 1997 LAKE OF THE WOODS VERTICAL CONTROL SURVEY
EXISTING TRAIL
CENTERLINE DRAINAGE DITCH (AGREED BOUNDARY LINE)
CULVERTS
CENTERLINE DRAINAGE DITCH
SE1/4-SW1/4
COE0703
WIDSETH