Judge Michael J. Davis
Mag. Judge Raymond L. Erickson

AO 440 (Rev. 10/93) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of Minnesota

UNITED STATES OF AMERICA,
Plaintiff,

V.

GARY BAILEY,
Defendant

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 05-2245 MJD|RLE

TO: (Name and address of Defendant)

Gary Bailey
1946 Range Line Rd SW
Williams, MN 56686
c/o Alan B. Fish, Esq.
109 2d St. NE, Roseau, MN 56751

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Friedrich A. P. Siekert, AUSA
U.S. Attorney's Office
600 U. S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard D. Sletten
CLERK

September 27, 2005
DATE

G Schneider
(By) DEPUTY CLERK

G.Schneider

AO 440 (Rev. 10/93) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: ______

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: ______

☐ Returned unexecuted: ______

☐ Other (specify): ______

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ______ Date ______ *Signature of Server*

______ *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**CIVIL ACTION NO.______**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARY BAILEY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT FOR PERMANENT INJUNCTION** |

The United States of America (the "United States"), through its undersigned attorneys, by the authority of the Attorney General, alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action commenced under section 309(b) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b), to obtain permanent injunctive relief against Defendant Gary Bailey ("Bailey") for the discharge of pollutants into waters of the United States in or about Lake of the Woods County, Minnesota, without authorization by the United States Army Corps of Engineers (the "Corps"), in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

2. By way of this complaint, the United States seeks (1) to enjoin the discharge of pollutants into waters of the United States without a permit in violation of CWA section 301(a), 33 U.S.C. § 1311(a), and (2) to require Defendant Bailey, pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), at his own expense and at the direction of the Corps, to restore

the wetlands to their pre-violation condition in accordance with the Restoration Order dated October 22, 2001, issued by the Corps.

## AUTHORITY AND NOTICE

3. Authority to bring this action is vested in the United States Department of Justice under 28 U.S.C. §§ 516 and 519, and in accordance with CWA section 309(b), 33 U.S.C. § 1319(b).

4. Notice of this action has been given to the State of Minnesota pursuant to CWA section 309(b) , 33 U.S.C. § 1319(b).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331 and 1345.

6. Venue is proper in the District of Minnesota pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. § 1391(b) , because Defendant Bailey resides in this District, the subject property is located in this District, and the violations alleged in this complaint occurred in this District.

## THE PARTIES

7. The Plaintiff in this action is the United States of America.

8. Defendant Bailey is a private individual residing in or near Williams, Minnesota.

## STATUTORY AND REGULATORY PROVISIONS

9. CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants, including dredged or fill material, into navigable waters except in compliance with, inter alia, a permit issued by the Corps pursuant to CWA section 404, 33 U.S.C. § 1344 ("Section 404 permit").

10. CWA section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, to issue Section 404 permits for the discharge of dredged or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

11. For discharges that originate or will originate in Minnesota, the Corps cannot issue á Section 404 permit unless the State of Minnesota either issues a water quality certification, or waives such certification, under CWA section 401, 33 U.S.C. § 1341(a).

12. CWA section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action in the district court of the United States for the district in which the defendant is located or resides or is doing business for appropriate relief, including a permanent injunction, against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

13. The term "person" is defined in CWA section 502(5), 33 U.S.C. § 1362(5), as "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body."

14. The term "pollutant" is defined in CWA section 502(6), 33 U.S.C. § 1362(6), as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."

15. The term "discharge of a pollutant" and the term "discharge of pollutants" both are defined in CWA section 502(12), 33 U.S.C. § 1362(12), to include inter alia "any addition of any pollutant to navigable waters from any point source[.]"

16. The term "dredged material" is defined in 33 C.F.R. § 323.2(c)(1997) as "material that is excavated or dredged from waters of the United States."

17. The term "discharge of dredged material" is defined in 33 C.F.R. § 323.2(d)(1)(1997), in pertinent part, as "any addition of dredged material into, including any redeposit of dredged material within, the waters of the United States." The term includes, but is not limited to, "the addition of dredged material to a specific discharge site located in waters of the United States" and "[a]ny addition, including any redeposit, of dredged material, including excavated material, into waters of the United States which is incidental to any activity, including mechanized land clearing, ditching, channelization, or other excavation."

18. The term "fill material" is defined in 33 C.F.R. § 323.2(e)(1997), in pertinent part, as "material used for the primary purpose of replacing an aquatic area with dry land or of changing the bottom elevation of an [sic] waterbody."

19. The term "discharge of fill material" is defined in 33 C.F.R. § 323.2(f)(1997) as "the addition of fill material into waters of the United States." The term generally includes, without limitation, "[p]lacement of fill that is necessary for the construction of any structure in a water of the United States; the building of any structure or impoundment requiring rock, sand, dirt, or other material for its construction; site-development fills for recreational, industrial, commercial, residential, and other uses; [and] causeways or road fills[.]"

20. The term "point source" is defined in CWA section 502(14), 33 U.S.C. § 1362(14), as "any discernible, confined and discrete conveyance...from which pollutants are or may be discharged."

21. The term "navigable waters" is defined in CWA section 502(7), 33 U.S.C. § 1362 (7), as "the waters of the United States, including the territorial seas."

22. The term "waters of the United States," as defined in 33 C.F.R. § 328.3(a)(1997), includes, <u>inter alia</u>: "(1) All waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; ... [and] (7) Wetlands adjacent to such

waters (other than waters that are themselves wetlands) identified in paragraphs (a)(1)-(6) of this section."

23. The term "wetlands " is defined in 33 C.F.R. § 328.3(b)(1997) as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

24. The term "adjacent" is defined in 33 C.F.R. § 328.3(c)(1997) as "bordering, contiguous, or neighboring. Wetlands separated from other waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and the like are 'adjacent wetlands.'"

**GENERAL ALLEGATIONS**

25. Defendant Bailey is a "person" within the meaning of CWA section 502(5), 33 U.S.C. § 1362(5).

26. The real property which is the subject of this complaint (the "Site") is located in or about Government Lot 3of Section Twenty-one (21), Township One Hundred Sixty-three (163) North, Range Thirty-three (33) West, Lake of the Woods County, Minnesota.

27. At the time of the unlawful discharges alleged in this complaint, Defendant Bailey owned the Site and/or controlled the activities that occurred on the Site.

28. The Site is approximately twenty-six (26) acres in size, is primarily a hardwood swamp, and is adjacent to Lake of the Woods in northern Minnesota.

29. Lake of the Woods is a "water of the United States" within the meaning of 33 C. F. R. § 328.3(a)(1)(1997).

30. The Site consists almost entirely of wetlands. The wetlands on the Site provided, among other benefits, a high functional level of wildlife habitat, shoreline protection, and water quality protection.

31. The wetlands on the Site are adjacent to Lake of the Woods and therefore are waters of the United States under 33 C.F.R. § 328.3(a)(7).

## FACTUAL ALLEGATIONS

32. By application dated January 18, 1990, Defendant Bailey applied for a Minnesota Department of Natural Resources ("MnDNR") permit to excavate an inland harbor and access channel to Lake of the Woods on the Site. The Corps was contacted relative to the proposed inland harbor project.

33. By letter dated March 13, 1990, the Corps advised Bailey the proposed inland harbor project was authorized under General Permit 001-MN, provided a separate permit was obtained from MnDNR and the conditions within the General Permit 001-MN were followed.

34. Among the conditions of the General Permit 001-MN were: (a) all dredged material was to be placed in an upland location and (b) the channel connection was not to result in the drainage or filling of any wetland area. The General Permit 001-MN also specifically excluded from its coverage fills to develop land for housing, industrial, or

commercial development. Accordingly, the General Permit 001-MN did not authorize fill in the wetlands on the Site.

35. The MnDNR subsequently issued a permit for the inland harbor project. The MnDNR did not extend the permit in 1997. No work was performed under the MnDNR permit.

36. By letter dated August 18, 1993, the Corps advised Bailey, among other things, that the Corps had became aware that Bailey's proposed harbor project, which had not been started as of that date, was located in a wetland area, that he was proposing to place fill and/or dredged material into the wetlands on the Site for the purpose of developing residential lots, and that the additional proposed work would require a Section 404 permit from the Corps in addition to the General Permit 001-MN and the MnDNR permit.

37. On or about May 11, 1994, the Corps met with Bailey on the Site. In a letter dated May 13, 1994, the Corps advised Bailey that he may want to hire a qualified private consultant to help him delineate the highly diverse site and to help him complete the required Section 404 permit application.

38. On or about June 15, 1998, the Corps conducted a Site visit with Bailey in attendance. The Corps found that Bailey, or other persons under his control, had conducted mechanized land clearing in the wetlands on the Site which resulted in a discharge of pollutants into wetlands, without a Section 404 permit in violation of CWA section 301, 33 U.S.C. § 1311. Upon information and belief, mechanized land clearing equipment was used

to accomplish the clearing in the wetlands. The mechanized land clearing created through the wetlands on the Site a corridor in the approximate width of 66 feet and the approximate length of 1,493 feet. The cleared corridor created a large opening in the hardwood canopy. The cleared corridor bisected the forested wetland on the Site and ran generally parallel to the shoreline between 260 and 400 feet from the lake. The land clearing was the first step in the construction of a new road to access the "Sunny Beach" development. During the site visit, the Corps verbally advised Bailey to cease all work on the road.

39. On or about June 17, 1998, Defendant Bailey filed a Local-State-Federal Project Notification Form with Lake of the Woods County proposing a project to construct an access road through the forested wetlands on the Site along the corridor already cleared without a Section 404 permit. In the notification form, Bailey stated he would be using a "backhoe/cat" to construct the road and acknowledged that 1.5 acres of wetland would be filled and/or drained by the project. Bailey acknowledged in his proposed state Wetland Replacement Plan dated August 12, 1998 that the wetland impact would be 2.9 acres.

40. On August 17, 1998, the Corps received a copy of the Local-State-Federal Project Notification Form from Lake of the Woods County. The Corps treated the form as an "after the fact" Section 404 permit application.

41. The Corps sent Bailey a Notice of Violation ("NOV") dated September 17, 1998, advising Bailey that a Section 404 permit had not been issued by the Corps for the road

project, that conducting such work without a permit was a violation of the Clean Water Act, and that no additional work could be performed prior to obtaining a Section 404 permit. The letter further stated the Corps had received Bailey's after the fact permit application on August 17, 1998, but it needed additional information from Bailey before the application could be processed.

42. On or about October 23, 1998, Defendant Bailey applied to the Lake of the Woods County to plat the eastern portion of the Site (approximately 13 acres) into lots for a residential development which would come to be known as "Sunny Beach."

43. On or about November 3, 1998, the Corps conducted a visit to the Site. On that visit, the Corps observed Bailey and/or other persons under his control had placed fill in the area previously cleared and that a gravel road with roadside ditches had been constructed. Upon information and belief, the equipment used to place the fill included a backhoe, a front-end loader, and/or a truck. The placement of fill and gravel and the excavation of ditches was done without a Section 404 permit from the Corps and in violation of CWA Section 301(a), 33 U.S.C. § 1311(a), and after the Corps had advised Bailey to cease work on the road until he had obtained a Section 404 permit from the Corps.

44. On or about December 22, 1998, the Lake of the Woods County Board approved the final plat of Sunny Beach.

45. Between December 1998 and June 1999, Defendant Bailey and his then-wife Kathryn Bailey signed warranty deeds or contracts for deed conveying 13 of the 14 lots in the Sunny Beach subdivision to third persons.

46. On June 8, 1999, the Corps determined that Bailey's after the fact Section 404 permit application was complete.

47. On June 24, 1999, the Corps issued a public notice to solicit comments regarding Bailey's after the fact Section 404 permit application to retain the dredged or fill material previously discharged into wetlands on the Site.

48. On or about November 15, 1999, the Corps conducted a Site visit. At that visit, Corps officials observed, among other things that gravel had been placed on the road surface and many of the 14 lots had driveway approaches extending from the road into the lots.

49. By letter dated December 17, 1999, addressed to the Corps, the Minnesota Pollution Control Agency ("MPCA") issued a water quality certification with certain conditions under CWA section 401, 33 U.S.C. § 1341(a) relating to the project described in Bailey's after the fact Section 404 permit application.

50. On August 29 and 30, 2000, the Corps and the United States Department of Agriculture's Natural Resources Conservation Service conducted an on-site wetland delineation of the Sunny Beach plat on the Site. The Corps's delineation found that most of the lots in the Sunny Beach plat consisted almost entirely of wetlands. The Corps's

delineation found the impact of the road project on wetlands on the Site included approximately 1.45 acres that had been filled, approximately 0.63 acres that had been excavated, and approximately 4.96 acres that had been or were being drained by associated ditches, for a total wetlands impact of approximately 7.04 acres. In addition, the Corps's delineation found that approximately 1.30 acres of wetlands were affected by filling and/or mechanized land clearing activities within 10 of the 14 lots.

51. After receiving the Corps's wetland delineation, by letter dated October 4, 2000, the MPCA revoked its CWA Section 401 water quality certification for the road project because the Corps's wetland delineation had shown the secondary and cumulative impacts would be greater than described in Bailey's application to the MPCA.

52. On June 12, 2001, the Corps denied Bailey's request for an after the fact Section 404 permit for the road, finding that issuance of the permit would be contrary to public interest.

53. Also on June 12, 2001, the Corps issued a public notice soliciting comments on the proposed remedy for the unauthorized road fill. The Corps received comments and considered them.

54. On October 22, 2001, the Corps issued a Restoration Order to Bailey directing Bailey to remove the access road, fill in the associated ditches, seed, and otherwise return the wetlands to their pre-violation condition. The Restoration Order set two deadlines: the

deadline for removing the unauthorized dredged or fill material and backfilling the ditches was August 15, 2002, and the deadline for seeding the area was October 15, 2002.

55. In December 2001, Bailey filed an administrative appeal from the decision by the Corps to deny his after the fact Section 404 permit application. The Corps denied the administrative appeal because the appeal was not submitted timely.

56. In March 2002, Bailey filed a civil action in the United States District Court for the District of Minnesota seeking, among other things, judicial review of the Corps's action denying his after the fact Section 404 permit and compensation from the United States on the grounds that the actions taken by the United States constituted a taking of his property in violation of the Fifth Amendment.

57. On November 21, 2002, the District Court dismissed two of the three claims asserted by Bailey, leaving only the claim challenging the Corps's denial of Bailey's application for the after the fact Section 404 permit. On August 7, 2003, the District Court upheld the Corps's denial of Bailey's application for an after the fact Section 404 permit.

58. To date, Bailey has failed to comply with the Corps of Engineers Restoration Order.

## CLAIM FOR RELIEF

## DISCHARGE OF POLLUTANTS WITHOUT A PERMIT

59. The United States incorporates herein by reference the allegations contained in paragraphs 1 - 58.

60. During the course the mechanized land clearing, ditching, and the filling activities described above, Defendant Bailey and/or persons acting on his behalf discharged dredged or fill material into waters of the United States at the Site without a Section 404 permit issued by the Corps.

61. Defendant Bailey had prior knowledge of the permit requirements of the CWA and that the Site contained wetlands based on the Corps's letter dated August 18, 1993 and otherwise.

62. The dredged or fill material that Defendant Bailey and/or persons acting on his behalf caused to be discharged as described above constituted "pollutants " as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

63. Defendant Bailey and/or persons acting on his behalf used mechanized land-clearing and/or earth-moving equipment to accomplish the discharges as described above. These pieces of equipment are "point sources " as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

64. The wetlands on the Site into which Defendant Bailey, and/or persons acting on his behalf, discharged dredged and/or fill material as described above are adjacent to Lake of the Woods, an international navigable water, and therefore are "waters of the United States" as defined in 33 C.F.R. § 328.3(a) and thus "navigable waters" as defined at CWA section 502(7), 33 U.S.C. § 1362(7).

65. Each instance of the placement of dredged or fill material into the wetlands on the Site as described above constitutes a "discharge of a pollutant" or "discharge of pollutants" within the meaning of CWA section 502(12), 33 U.S.C. § 1362(12), and within the scope of CWA section 404, 33 U.S.C. § 1344.

66. Defendant Bailey did not obtain a Section 404 permit from the Corps for the above-described discharges of dredged or fill material into waters of the United States at the Site as required by CWA sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.

67. At the time of the unlawful discharges described above, Defendant Bailey owned the site and/or controlled the activities at the Site.

68. Defendant Bailey conducted, contracted for, supervised, and/or otherwise controlled the unauthorized activities at issue and described above.

69. Defendant Bailey is a "person" within the meaning of CWA section 502(5), 33 U.S.C. § 1362(5).

70. Defendant Bailey has violated and continues to violate CWA Section 301(a), 33 U.S.C. § 1311(a), because of the unauthorized discharges of dredged or fill material into waters of the United States, including wetlands, at the Site and by his allowing said discharged dredged and fill material to remain in the wetlands on the Site, all as described above.

71. Each day that such unpermitted discharges of dredged or fill material remain in place in the wetlands on the Site constitutes a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

72. To date, Defendant Bailey has failed to comply with the Restoration Order issued by the Corps on October 22, 2001. The dredged or fill material remains in the wetlands on the Site.

73. Defendant Bailey is subject to injunctive relief pursuant to CWA sections 309(b), 33 U.S.C. §§ 1319(b).

74. Unless enjoined by order of this Court, the Defendant is likely to continue to allow the dredged or fill material to remain in the wetlands on the Site in continuing violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays this Court order the following relief:

1. That Defendant Bailey be enjoined permanently from allowing the discharged dredged or fill material or other pollutants to remain in the wetlands on the Site;

2. That Defendant Bailey be enjoined permanently from discharging or causing the discharge of dredged or fill material or other pollutants into any waters of the United States except in compliance with the CWA;

3. That Defendant Bailey be enjoined to undertake measures, at Defendant's own expense and at the direction of the Corps, to effect complete restoration of the Site in

accordance with the restoration order issued by the Corps on October 22, 2001 or as otherwise ordered by the Court;

4. That the United States be awarded its costs and disbursements incurred in this action; and

5. That the United States be granted such other relief as the Court may deem just and proper.

Date: 9-27-05

THOMAS B. HEFFELFINGER
United States Attorney
District of Minnesota

Friedrich A.P. Siekert

FRIEDRICH A.P. SIEKERT
Assistant U.S. Attorney
Attorney ID No. 142013
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600

OF COUNSEL:

MOLLY A. MCKEGNEY, ESQ.
Assistant District Counsel
U.S. Army Engineer District, St. Paul
190 East 5th Street
St. Paul, MN 55101