STATE OF MINNESOTA

COUNTY OF LAKE OF THE WOODS

DISTRICT COURT

NINTH JUDICIAL DISTRICT

---

State of Minnesota,

Plaintiff,

vs.

Gary Lee Bailey,

Defendant.

---

**DEFENDANT'S MEMORANDUM OF LAW**

Court File No. T8-05-000697

PROCEDURAL HISTORY

Since the mid 80's Defendant has owned a government lot of real property in Lake of the Woods County along the shores of Lake of the Woods, consisting of approximately 65 acres. The majority of this land was agricultural in nature with the exception of approximately 24 acres located along the shoreline that was not plowed under in previous years, but kept in a natural state, and originally zoned as natural resource.

The Defendant approached Lake of the Woods County requesting to develop the lakeshore property. The initial proposal was to build a marina to serve the western shore of Zipple Bay within Lake of the Woods. Lake of the Woods County supported this project. The Corp of Engineers informed the Defendant the marina fell under a nationwide permit and all that was required was approval from the Department of Natural Resources. Defendant obtained approval.(See Exhibit 1 attached hereto.)

This plan was abandoned due to financial considerations of the project. What is relevant however, is that this marina would have necessitated an identical and no less intrusive access road as constructed and applied for in the federal CWA application for the 'Sunny Beach' access road, the federal denial of which was the catalyst for state action here today.

In October 1998, Defendant submitted application to Lake of the Woods County to plat the lakeshore portion of a 52 acre government lot. (See Exhibit 2 attached hereto) The plat, consisting of approximately 13 acres, was met with approval. (See Exhibit 3 attached hereto)

The Lake of the Woods County Board approved the Plaintiff's initial application to plat the parcel as a residential subdivision in November, 1998, and approved the final plat in December of 1998. (See Exhibit 15 previously submitted) A motion to amend the county zoning ordinance to change the land use of the 'Sunny Beach' plat from agricultural/natural environment to residential was also approved by Lake of the Woods County on December 18, 1998. (See Exhibit 15 previously submitted).

In the summer of 1998 after speaking with local government officials, Defendant began building an access road for the subdivision according to the specifications required by Lake of the Woods County Highway Department. Lake of the Woods County told Defendant how to construct the road and he complied. Defendant relied on local government officials to guide him through the various requirements of completing this project.

Lake of the Woods County highway engineer, Walter Leu, in a statement dated August 13, 1998, clearly mislead the Army Corp of Engineers in this process. The record is clear that Mr. Leu, while simultaneously instructing Defendant on deficiencies in the access road that needed to be rectified, was advising the Army Corps of Engineers that they had advised Bailey to stop

construction on the road until the Army Corps permitted it. (See Exhibits 3 previously submitted and Exhibit 4 attached hereto) Specifically, on September 16, 1998, the County was directing Defendant to fix deficiency's with regard to the road while one month earlier, asserting to the Corp, the County had directed Defendant to cease building activities. This is not the only misbehavior by governmental officials regarding this failed development.

It is clear that Lake of the Woods County felt this land was developable and represented to the Defendant and other governmental entities the land was developable. In its recommendation to the County Board to accept the plat, Gary Lockner, the Environmental Services director, asserted as follows:

> . . . . . .
> The County Subdivision Ordinance which (sic) requires the developer to supply soils and ground water information for proposed plats in order for the County to determine if and how proposed lots can be built on. Gary Bailey has not been able to supply that information, so following the initiation of wetlands replacement negotiations with wetlands administrator and the local SWCD I requested expert advise from Erik Morhing, a ground water specialist that works for BSWR. He and Brian Dwight and myself visited the site with Gary [B]ailey's permission on August 21st . Even through the County has been subject to a noticeable dry period for the month previous Morhing was able to ascertain the likelihood of the ground water conditions from available data and site observations.
>
> It was determined that even though the area is almost certainly subject to a high ground water table due to water moving from the Prosper ridge area to the west, a reasonable percentage of the water in the south central portion of the property may be from surface water. Copies of soil sheets are attached. The most noticeable soils feature encountered was a very highly developed soil structure. This strong soil structure allows water to pass through the soil quite rapidly, but also gives the soil a high degree of weight bearing capacity.
>
> With a drainage system lowering the water table 2 to 2.5 feet, which is the OHWM of the lake, and with some fill that would be normally

> associated with building, it can reasonable be expected that the ground in the area of the wettest part of the proposed development would support structures even in the wettest periods. The entire frontage of the proposed plat is floodplain. Mound systems are required by county, state and federal regulation in floodplains. The Lake of the Woods Zoning office will grant septic system permits for mound systems in the proposed Bailey plat. Approval of the septic system permits is subject however to improved drainage at each site that lowers the water table to levels acceptable to ISTS (Individual Sewage treatment System) design standards.
> Lot size minimums are 100 feet wide at the shoreline and building line and 200 feet deep. Minimum lot area is 20,000 square feet. Building setback in 75'. Septic system setback is 50 feet and downhill from the well.
>
> The Lake of the Woods Zoning recommends acceptance of a plat application for the Bailey property.
> (See Exhibit 3 attached hereto.)

Further, In a letter to the MPCA dated October 14, 1999 written by Gary Lockner, Director of Environmental Services, and signed by Les Lemm, SWCD Resource Specialist and Dale Krystosek, all provided the opinion from a site investigation of the property, conducted September 29, 1999, that the "water table could not establish itself to within at least a foot of the surface within 100 feet of the lakeshore." (See Exhibit 5 attached hereto)

This is an opinion that the first 100 feet from the shore is upland. The letter also stated "it appeared that the soil conditions in the area of the septic systems and buildings would allow for mound systems and occupied structures." (Id.)

Dale Krystosek later testified at an MPCA administrative hearing this statement "was a misrepresentation of the work we did that day".(See Exhibit 10 MPCA transcript p.165) Les Lemm, employee of SWCD, also testified at the hearing and implied that Gary Lockner led Krystosek and Lemm to the exact small area of upland which the Corp of Engineers later found in a delineation,

and implied Lockner intentionally led them to the only area of upland on the site. (See Id. p.188-192)

It is clear the Minnesota Pollution Control Agency was told by Lake of the Woods County that there was at least 100 feet of upland between the lake and the wetland within this plat, and the property would be suitable for septic systems and building residential homes.( See Exhibit 5 attached hereto)

Defendant was informed mitigation would be required for any wetlands that would necessarily be filled for the access road. Defendant's state based Wetland Conservation Act replacement plan for the access road was approved by Walter Leu, then acting WCA administrator for Lake of the Woods County. (See Exhibit 3 previously submitted). Defendant clearly has complied with all local and state laws.

On November 5, 1999, Lake of the Woods County sent a fax to the Army Corp of Engineers that stated as follows:

> Permit should be addressed to the County. The County has taken the road over. - See attached sheet. Any questions or problems give me a call.
> (See Exhibit 5 previously submitted.)

It was decided Lake of the Woods County should be applicant for the federal permit, given it was now a publically owned road.

Lake of the Woods County even offered banked wetland credits as mitigation for the road as Lake of the Woods County acknowledging they had taken over as permit applicant for the Federal Clean Water Act permit. (See Exhibit 7 previously submitted) It appears from the federal administrative record, the Army Corp drafted a permit for acceptance of the road and utilized the County's offer to mitigate, in September of 2000. (See Id.)

This is not the only action Lake of the Woods County has taken with regard to the access road. Lake of the Woods County Highway Department has actually placed some of the fill the Army Corp of Engineers has now ordered Defendant alone to remove. The Corp is simply turning its head to Lake of the Woods actions, completely ignoring Lake of the Woods Counties acts.

It is clear LOW had no issue with developing this property or filling this wetland and in fact, issued approach and culvert permits between August 1998 and September 1999. (See Exhibit 2 previously submitted)

Plaintiff's characterization of Defendant as a wetland violator is false.

Defendant, at the request of Lake of the Woods County, applied for a permit under the State's Wetlands Conservation Act on June 17, 1998 for the access road. (See Exhibit 3 previously submitted) The parties had no problems reaching an agreement on the acts necessary to adequately replace any lost wetlands. A Wetland Conservation Act permit application was approved by Lake of the Woods County and the Soil and Water Conservation District, as a participant of the technical evaluation panel, agreed with the replacement of the wetlands as proposed by Defendant. (Id.)

Another Wetland Conservation Act Application was submitted at the request of the SWCD. This was also approved on June 17, 1999. (See Exhibit 6 attached hereto.)

Lake of the Woods County had taken over as applicant on the federal after-the-fact permit application when they took over ownership and maintenance of the road upon acceptance of the plat. (See Exhibit 6 previously submitted) In November, 1999, Lake of the Woods County did not dispute ownership of the access road occurred upon Lake of the Woods County Boards acceptance of the plat. However now the County clearly states it never owned the road. (See Exhibit 7 attached hereto)

Lake of the Woods county was the sole communicator with the Army Corp of Engineers following the plat approval given the fact that Lake of the Woods County had taken over as applicant to the Corps and owned the road.

As required by the federal rules, an application was also made to the Minnesota Pollution Control Agency for a 401 Water Quality Certification. The MPCA certified the Section 401 requirement on December, 17, 1999. (See Exhibit 8 attached hereto)

This certification was later revoked by the MPCA without the benefit of an independent investigation, as it appears the MPCA relied solely on the findings of the Army Corp in its decision to revoke the certification. (See Exhibit 9 attached hereto)

Plaintiff requested an administrative hearing regarding the MPCA's decision to revoke the 401 certification for the access road. At that hearing various government officials testified under oath. (See Exhibit 10 attached hereto) The administrative law judge approved the MPCA's decision to revoke the permit. (See Exhibit 11 attached hereto) Testimony at that hearing has direct bearing on issues in this case.

The Army Corp of Engineers denied Lake of the Woods Counties permit application for the access road although ordered Defendant alone to fully restore the access road. Lake of the Woods County, as applicant, did not appeal the decision or attempt to negotiate or resubmit a plan even though it represented to the Defendant it would appeal the decision. (See Exhibit 12 attached hereto) In fact, Lake of the Woods County did just the opposite. Lake of the Woods County then ordered lot owners to remove fill from their property. (See Exhibit 13 attached hereto)

It is clear Lake of the Woods County changed its mind concerning this project, when it came to having to question the federal governments admittedly controversial opinion regarding the extent

of wetlands in the area. First Lake of the Woods County supported the project, it is now assisting in destroying the project.

In an attempt to resolve the matter, Defendant offered a full 52 acres of prior converted cropland (PC) to be put into a conservation easement as on-site compensatory mitigation to offset the impacts of the access road. This parcel is located adjacent to the Sunny Beach subdivision and is therefore also adjacent to Lake of the Woods. The Army Corp rejected this proposal. Plaintiff is unaware of any negotiations initiated by Lake of the Woods County to keep the access road it now owned.

To further complicate matters, Defendant received the federal permit denial letter from the Army Corp with an attached document called a 'Request for Appeal'. (See Exhibit 8 previously submitted) The document indicated the appropriate appealing agency of the Permit Denial to be "Lake of the Woods County" due to the fact that the County had taken over the after-the-fact permit application and owned the road. (See Id. pg. 3) As the Request for Appeal was addressed to Lake of the Woods County, Defendant did not appeal the decision as the County had stated they would be appealing the decision. (See Exhibit 12 attached hereto) Lake of the Woods County did not appeal the decision. Defendant's later request to submit an appeal was denied by the Corp as untimely. A restoration order was issued by the Army Corp of Engineers to Defendant alone to remove a publically owned access road. Removal of this road would entirely prohibit access to the individual lots, many of which are owned by others.

In March of 2002, Defendant filed a civil action in the United States District Court for the District of Minnesota, seeking judicial review of the permit denial and the restoration order issued by the Army Corp of Engineers. That case was dismissed and Defendant was thrown into what is

known as The Tucker Act Shuffle. Private property owners whose rights have been trampled must choose between suing for injunctive relief in the federal district courts or monetary relief in the U.S. Court of Federal Claims, as the government argues that one court cannot decide on the relief sought until the other court has made a determination of the relief within that court's jurisdiction. As a result, citizens are 'shuffled' back and forth. Due largely to arguments utilized by the government in the Tucker Act Schuffle, the Defendants suit was dismissed.

Defendant has filed a claim against the United States in the Federal Court of Claims alleging the Corps decision results in an uncompensated taking of property. As a defense, the U.S. has claimed the MPCA is responsible for any alleged uncompensated taking as a result of it's revocation of the 401 certification. A convenient defense to a regulatory taking claim is pointing fingers at other regulatory agencies for the taking. Throughout this entire process, the governmental agencies have pointed fingers at one another when called to task for the legal consequences of their actions.

Meanwhile, Defendant has been subjected to legal action brought against him by one lot owner, and other lot owners have quit paying installments on the contract for deeds held by Defendant, subjecting him to financial losses. The entire development project previously approved by Lake of the Woods County is now being destroyed with the assistance of Lake of the Woods County. The County has abandoned maintenance the public road. Defendant alone has commenced litigation against the Federal government for this clear interference of property rights.

It is clear the restrictions placed on the subject property are such an extent that as of today, there is no economical viable use of "Sunny Beach" or in the alternative, the value of this has been substantially diminished. The Army Corps of Engineers desires the land to be sold to a state park or to a nature conservancy. (See Exhibit 14 attached hereto)

Individual lot owners who purchased the previously approved residential lakeshore property have lost access to their property due to the Corp's Order to remove the road. This is complicated by the fact that Defendant has no standing to have this federal Restoration Order judicially reviewed until the U.S. attempts enforcement.

It does not appear the federal government will enforce its restoration order issued to Defendant given the actions of Lake of the Woods and a high standard it must meet to achieve judicial approval of such a drastic action, due to Lake of the Woods County being comprised almost entirely of wetlands. Again, Defendant has no standing to question the decision of the Federal Government's decision to issue the restoration order until such time as an enforcement action is brought. This has not happened as of today.

Plaintiff's argument in the Federal Court of Claims alleging a taking is based upon the permit denial, a rare 'final agency decision' for the Corp. The Defendant is awaiting a decision on a motion for summary judgment to dismiss his complaint, filed by the United States, based upon the actions of the MPCA. The fact that Defendant sold these lots following the plat approval is now being used as a legal issue by the state on a standing issue as well.

The Army Corps of Engineers has further alleged it is the MPCA's responsibility that the road permit was denied, claiming the Corps was prohibited from permitting the project without State 401 Certification. The MPCA initially certified the road based upon representations made by Les Lemm and Gary Lockner in October 1999. That certification was revoked following the Corp's delineation of the property. Hence, all of the involved state agencies are pointing fingers at one another for this failed legislatively approved plat with no road access.

Since the final agency decision of the Army Corp was made, Lake of the Woods County has

denied all building permit applications, utilizing the decision of the Army Corp of Engineers for its denial.(See exhibit 15 and13 attached hereto)

The Defendant has provided this history as it is an important backdrop to the criminal charges before this Court.

As the situation exists to day, Lake of the Woods County permitted culverts in 'Sunny Beach', sold the culverts to individuals and then subsequently requires landowners to remove all fill. Lake of the Woods County directed the landowners how to place the culverts and fill, given the placement was within government property, i.e. the ditch. Lake of the Woods County directed and aided landowners to violate the WCA under its own argument it attempts to make concerning any alleged violation of the WCA.

Lake of the Woods County officials went so far as to not even accept an application for a holding tank from one lot owner given the controversial nature of this subdivision and government officials refused to even speak with the Defendant regarding anything to do with the development project. To say this project is a bungled administrative nightmare is an understatement.

Further, Lake of the Woods County abandoned the legally platted access road which has and continues to degrade. Without the access road, Defendant will not have reasonable and suitable access to Lot One which he retained as record owner.

After Defendant's receipt of the state restoration order for Lot 5 and, at the request of Lake of the Woods County at a board meeting, the Defendant submitted an application for no-loss exemption pursuant to the WCA on April 3, 2003. (See Exhibit 18 previously submitted) Lake of the Woods County has taken no administrative action on this application, completely ignoring its receipt, although Steve Sindelir, assistant environmental director, admitted receipt of the application

in his deposition on August 26, 2005. In fact, Lake of the Woods County made no response whatsoever to Defendant's application.

The Defendant received a tab charge executed by Tracy Hanson and Jeff Birchum, noted as assisting officer. Jeff Birchem is an conservation officer with the Department of Natural Resources. The tab charge alleges Defendant violated Rule 8420.0290, alleging the date of offense as October 1, 2004, charging Defendant with a violation of a restoration order for Lot 5 of Sunny Beach. Defendant did not place the fill which he has been ordered to remove. Upon information and belief, David Wolfe, the previous lot owner, placed the culvert and fill at the direction, and with the assistance, of Lake of the Woods County.

Further, Lake of the Woods County has directly placed fill in the real property known as 'Sunny Beach' without a permit and, utilizing the State's argument, this as well violated the "Wetland Conservation Act". No administrative or criminal charges have been commenced against Lake of the Woods County.

Lake of the Woods County placed fill in the access road of Sunny Beach and also cleaned ditches within this subdivision. Lake of the Woods County also placed a culvert along the northern boundary of the platted parcel, replacing a ditch which required a substantial amount of fill. The State of Minnesota did not issue a restoration order for this 'illegal' activity to Lake of the Woods County.

Defendant requests the criminal complaint be dismissed upon the following grounds and arguments.

**ANALYSIS**

ISSUE: The criminal charge in the above matter violates the equal protection clause of U.S.

Const. Amend. XIV and therefore the charges must be dismissed.

A Defendant can raise the defense of discriminatory enforcement by law enforcement officials on all levels of state criminal laws. City of Minneapolis v. Buschette , 307 Minn. 60, 66, 240 N.W.2d 500, 503 (1976).

It is settled law that under the equal protection clause of U.S. Const. Amend. XIV, persons accused of violating a regulatory law imposing penal sanctions are protected from an intentional discrimination in the enforcement of the law. See State v. Vadnais, 202 N.W.2d 657, 295 Minn. 17 (1972)(Reversing conviction and dismissing charge of parking a mobile home trailer upon land in violation of township ordinance due to undisputed failure of township to enforce law on others.) citing Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L. ed. 220 (1886).

"A conscious exercise of some selectivity in enforcement, based on a rational exercise of police or prosecutorial discretion or a mere laxity in enforcement, does not itself establish a constitutional violation. However, an intentional or deliberate decision by public officials, acting as agents of the state, not to enforce penal regulations against a class of violators expressly included within the terms of such penal regulation does . . . constitute a denial of the constitutional guarantee of equal protection of the laws." Id.

The discriminatory enforcement defense should be raised prior to trial by motion pursuant to the Minnesota Rules of Criminal Procedure. Because the issue does not go the guilt or innocence of the particular defendant, the matter should be heard and decided by the court prior to trial. See City of Minneapolis v. Buschette, 307 Minn. 60, 240 N.W.2d 500 (Minn.1976). The discrimination must be shown by a preponderance of the evidence. State v. Russell, 343 N.W.2d 36 (Minn.1984).

It is clear that under the State's own factual basis for this complaint against the Defendant,

Lake of the Woods County is a violator of the Wetland Conservation Act in the exact same 'wetland' it has been alleged Defendant and other landowners violated.

The technical evaluation panel has clearly refused to recommend the issuance of a restoration order to Lake of the Woods County as the panel is made of, in part, of the very people that issued the wetland fill applications, however, this does not abrogate the Defendant's equal protection rights. Further, this delay may very well have prevented it. In fact, the DNR may now be prohibited from pursuing enforcement against the County given the Statute of Limitations in effect.

The WCA has been enforced in a discriminatory manner which violates the equal protection clause of the Fourteenth Amendment because Lake of the Woods County has been treated differently under the WCA than other 'wetland violators' in Sunny Beach.

As a result of this discriminatory enforcement of a regulatory law, the State of Minnesota is precluded from prosecuting the Defendant until such time as it enforces the laws in a nondiscriminatory manner in accordance with the equal protection clause of the Fourteenth Amendment. Id. citing People v. Utica Daw's Drug Co. Inc., 16 App. Div. 2d 12, 225 N.Y.S. 2d 128, 4 A.L.R. 3d 393 (1962).

The State cannot dispute Lake of the Woods County has placed fill along the northern border of Lot 14 in its placement of a culvert extending from the access road to the lakeshore. The State has provided no argument whatsoever to redeem Lake of the Woods actions. No permit applications have been disclosed to the defense for the County's work, nor has the State disclosed restoration orders to Lake of the Woods county for any of it's activity.

LOW further placed fill in the form of gravel in the access road and conducted ditching activities parallel to the access road that would by all definition, violate the WCA. Lake of the

Woods County has not made application pursuant to the WCA for the placement of fill within 'Sunny Beach', or anywhere near Sunny Beach during its tenure of owning and maintaining the access road, nor before. In fact, Lake of the Woods County was found to have illegally filled adjoining portions of Sandy Shores Drive, which it admits, and has apparently applied for an after-the-fact permit with the Corps.(See Exhibit 13 previously submitted)

The DNR has not issued a restoration order to Lake of the Woods County. The State is clearly discriminating in its application of the law and this is a violation of equal protection as guaranteed by the Constitution. These facts, under the doctrine of equal protection necessitates dismissal of all charges.

ISSUE: The State is equitably estopped from enforcing the restoration order given the local government units bad behavior in the administration of this development project which led directly to the alleged wetland violation for which the State is now attempting to enforce. In the alternative the doctrine of entrapment bars this charge.

In Minnesota, equitable estoppel will be applied against the government in a criminal prosecution context. See State v. Liepke, 403 N.W.2d 252, 256 (Minn. App. 1987)(barring criminal prosecution for violations of zoning laws).

The general rule for establishing equitable estoppel is that a person must demonstrate inducement to rely, in good faith, on language or conduct resulting in injury, detriment, or prejudice. Ridgewood Dev. Co. v. State, 294 N.W.2d 288, 292 (Minn.1980). The simple fact of this case is that Lake of the Woods County created the situation as it exists today, and as a result of the representations of those officials, the State is estopped from enforcing its police powers.

Applying the law to the specific circumstances of this case, the State will be estopped from exercising its police powers when a property owner, (1) relying in good faith (2) upon some act or

omission of the government, (3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights which he ostensibly had acquired. Id.

Ridgewood Dev.Co. is the Minnesota landmark decision examining the doctrine of equitable estoppel and vested rights. The vested right doctrine in Minnesota developed specifically to deal with State control over private development through the use of zoning provisions and building permits. (See Hawkinson v. County of Itasca 304 Minn 367, 231 N.W.2d 279 (1975).

The vested right doctrine and equitable estoppel are used by the Courts in Minnesota and else where as alternative ways of resolving developer/government relations in the land use context. See Generally Cunningham and Cremmer, vested rights, estoppel, and the land development process, 29 Hastings L.J. 623 (1978).

The major difference between the doctrines concerns the Courts focus. While a Court applying a theory of equitable estoppel investigates the loss of the developer if he is not permitted to finish the project, in vested rights analysis the Courts asks whether a developer has progressed sufficiently with his construction to acquire a vested right to complete it.

It is undisputed Lake of the Woods County platted this parcel of property as a residential subdivision and Defendant sold most of the lots. Nothing remained for the developer of this project following the approval by the County. Clearly, Defendant had a vested right to sell the parcels as platted, residentially zoned real estate with access.

It is undisputed the County owned the access road upon approval of the plat as they have admitted as much. (See Exhibit 5 previously submitted) The County was the applicant for the Army Corp of Engineers permit for the access road because of the approval of the Plat.(See Exhibit 14

previously submitted) It is undisputed the County has abandoned the road after the Corp of Engineers denied its permit application.(see exhibit 7 attached hereto) It is undisputed the County sold lot owners gravel and culverts and permitted the placement of these culverts and fill in the exact same wetland they are now alleging wetland 'violations' yet they permitted fill and actually placed fill within Sunny Beach in violation of State law. (See Exhibit 1 previously submitted)

Because the local government unit previously established this parcel of property as a platted residential subdivision, and Lake of the Woods County permitted these culverts, landowners have a vested right to be permitted to have access and reasonable use of their property.

The State has completely ignored landowners rights and Lake of the Woods County's actions regarding this piece of property and LOW's inducement, aiding and instructing of landowners to violate the WCA. Lake of the Woods County even sold Defendant the gravel for the access road.(See Exhibit 10 previously submitted) Clearly this is a case where the doctrine of equitable estoppel should apply.

The next analysis under vested rights further shows the fill should remain and not be removed. Ridgewood Development Co. v. State., 294 N.W.2d 288, 294 (Minn. 1980). In this context the court determines whether a developer has made sufficient progress with its project or created such binding commitments as to acquire a vested right to complete the project. Id.

As a general rule, a right becomes vested when it has 'arisen upon a contract, or transaction in the nature of a contract, authorized by statute and liabilities under that right have been so far determined that nothing remains to be done by the party asserting it.' Id. (quoting Yeager v. Delano Granite Works, 250 Minn. 303, 307, 94 N.W.2d 363, 366 (1957)) A mere expectation, desire, or intention to develop a property in a particular way is not sufficient to create a vested right.

Wermager v. Cormorant Township, 716 F.2d 1211, 1215 (8th Cir. 1983). To acquire a vested right, a developer must have progressed significantly with physical aspects of the project or made a binding commitment to develop the property. Id. Central to this case is the ability and right to access.

The Defendant undisputedly spent thousands of dollars on this development project. The County required the Defendant to post a bond in the amount of $10,000.00 to ensure the completion of the access road was up to County specifications. (See Exhibits 9 and 10 previously submitted) The Defendant spent $25,000.00 building the access road and thousands of dollars on surveyors to complete the plat. Defendant agreed to provide mitigation for lost wetlands. Clearly, these are not acts that rise to a criminal level.

The plat was legislatively approved and the access road transferred to Lake of the Woods County, through its acceptance of the final plat. LOW made a legislative determination to allow sewer systems on the property. Indeed, in a letter addressed to the County Board in support of Defendant's application to subdivide and plat the parcel know known as Sunny Beach, Environmental Services Director, Gary Lockner, specifically determined that sewers would be allowed.(See Exhibit 3 attached hereto) Further, in October, by way of a separate letter to the MPCA, Gary Lockner, and members of the technical evaluation panel provided the opinion there was at least 100 feet of upland along the shoreline which would support buildings and sewer systems. (See Exhibit 5 attached hereto)

It is clear, Lake of the Woods County administrators made a land use suitability analysis concerning 'Sunny Beach' plat wherein Lake of the Woods determined the lots were buildable lots prior to accepting the plat pursuant to Minnesota Rule 6120.35 which states:

6120.3500 SUBDIVISION PROVISIONS.

> Subpart 1. Land suitability. Each lot created through subdivision must be suitable in its natural state for the proposed use with minimal alteration. Suitability analysis by the local unit of government shall consider susceptibility to flooding, **existence of wetlands**, soil and rock formations with severe limitations for development, severe erosion potential, steep topography, inadequate water supply or sewage treatment capabilities, near-shore aquatic conditions unsuitable for water-based recreation, important fish and wildlife habitat, presence of significant historic sites, or any other feature of the natural land likely to be harmful to the health, safety, or welfare of future residents of the proposed subdivision or of the community.
>
> Minn. Rule 6210.3500 emphasis added.

Lake of the Woods County determined sewer systems would be allowed within the Sunny Beach plat prior to the final plat being accepted by the county board and made a legislative determination the land was suitable for building. The State then makes 'an about face' after lots were sold and determines no building will take place and all previous fill placed within Sunny Beach must be removed, in direct contravention to its original position and legislative determination.

Further, all building permit applications submitted have been denied. For example, after the final plat approval, Jamie Gowdy purchased Lot 10 on a contract for deed from Defendant. Mr. Gowdy then applied to Lake of the Woods County for a building permit. The application included an Individual Sewage Treatment System Worksheet drafted by a certified sewer designer that determined a mound system was feasible.(See Exhibit 17 attached hereto) The building permit was denied. (Id.)

The reasoning for the denial was that no sewers would be allowed on the property due to wetlands. The denial, dated October 11, 2001, reads:

> First of all, the US Army Corps of Engineers delineated Sunny Beach Plat and has determined that most of the plat, and all of Lot 10, is wetlands. County and MPCA regulations do not allow the permitting of septic systems in wetlands.
>
> Secondly, the US Army Corps of Engineers has reviewed the wetlands requirements for the road that was constructed to serve Sunny Beach Plat. It is the developer's responsibility to satisfy County, state and federal wetlands regulations. The Corps of Engineers has not approved the wetlands replacement plan that Gary Bailey, the plat developer, has submitted for the road. They consider the road to be in violation of their regulation, and may require that the road be removed and the wetlands be restored. Without the road the lots have no access.

First, Lake of the Woods County made a suitability analysis pursuant to 6120.3500 which requires a determination of whether sewers would be allowed then subsequently determined sewers would not be allowed. These contrary representations cannot be argued.

A governmental entity will be estopped only if it committed affirmative misconduct. Id. see also In re REM-Canby, Inc., v. Minn. Dept. of Human Servs., 494 N.W.2d 71, 74 (Minn. App. 1993). The government's act or omission must be tantamount to an affirmative misrepresentation. See Brown v. Minn. Dept of Publ. Welfare, 368 N.W.2d 906, 910 (Minn. 1985). The party must also demonstrate expenditures unique to the proposed project that would not be otherwise usable. Ridgewood Dev.Co. v. State, 294 N. 2d 288, 292 (Minn.1980)

There is no dispute that Lake of the Woods approved the plat for this subdivision, finding the proposed development buildable. All governmental agencies, including the DNR, received notice of the public hearing on that application to plat, no agencies raised a concern. The local government unit determined the land to be suitable for building pursuant to established rules. There was nothing left to be done by the Defendant.

The lots were sold and individual lot owners, relying on affirmative representations by Lake of the Woods County officials placed fill in their property. Lake of the Woods County sold the lot owners the culverts and gravel and specifically directed their actions with culvert permits. Criminal charges should be estopped as a result of the County's actions.

Moreover, an agent for the Board of Soil and Water Resources, Dale Krystosek, has testified under oath concerning the letter submitted to the MPCA by Gary Lockner which he had signed, that the representations in the letter were a 'misrepresentation' of his evaluation of 'Sunny Beach' and a misuse of information. (See MPCA Transcript p.165) Dale Krystosek and Les Lemm insinuated that Gary Lockner mislead them in the evaluation of this property and led them to an area of upland to conduct a soil boring. (See MPCA transcript p. 158 and 187-192) Criminal charges are clearly improper when a state employee has alleged misrepresentation of another government employee.

The Defendant has commenced suit against the State requesting a mandamus requiring the State to initiate inverse condemnation proceedings for an unconstitutional taking of private property. The regulations that have been placed on this property are such an extent that there remains no economical viable use to the property.

Clearly related to the instant action is a citizens freedom to use and enjoy their property. The State of Minnesota, through its various administrative, technical and enforcing agencies has made clear that this property may not be put to any sort of use due to a determination that highly valuable wetlands exist on the property that serve a valuable public purpose of protecting water quality and providing habitat to wildlife. Although this determination was made by a federal agency, the State has embraced this agency's decision. Most notably, the instant the property was determined to be such highly valuable wetland by the federal government, Lake of the Woods County began issuing

state based restoration orders for fill and culverts that Lake of the Woods County previously permitted. Should the State be allowed to proceed with this enforcement proceeding, lot owners will be left with residentially platted lakeshore property with no access to that property.

The State, through its enforcement proceeding is taking this property without just compensation in violation of the State and Federal Constitution.

As so stated in State v. Vadnais, "justice demands that a court must not lend itself to a prosecution which would abridge a fundamental constitutional right. To do otherwise would be to grant the right but in reality to withhold its privilege and enjoyment." citing Mapp v. Ohio, 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.ed. 1081, 1090 (1961). The regulations the local government unit has placed on this property as directed by the State, are such an extent there remains no economical viable use that the Defendant's development has been completely destroyed. Individual lot owners are further being constructively evicted from their own residentially approved real property as the removal of the gravel and culverts will effectively prevent access. As the Court is aware, access to ones property is a constitutional right as well.

Article I, Section 13, of the Minnesota constitution provides that "private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minnesota Statutes § 117.025, subd. 2 (2000), defines "[t]aking and all words and phrases of like import" to include "every interference, under the right of eminent domain, with the possession, enjoyment, or value of private property." Property owners who believe the state has taken their property in the constitutional sense may petition the court for a writ of mandamus to compel the state to initiate condemnation proceedings. Gibson v. Commissioner of Highways, 287 Minn. 495, 498, 178 N.W2d 727, 729-30(1970) Defendant has pled this cause as no payment has

been made by any governmental agency to Defendant or anyone else. Still the State pushes for criminal enforcement, completely ignoring rights guaranteed by the Constitution.

The State should be equitably estopped for its failure to compensate as well.

The doctrine of equitable estoppel and vested rights is closely related to the defense of entrapment which the Defendant also alleges.

A Defendant established a prima facie case of entrapment where the defendant shows that the government agent initiated the offense that the defendant lacked the predisposition to commit the offense. State v. Lenorud, 412 N.W.2d 816 (Minn.Ct.App.1987) Defendant would argue that Lake of the Woods County providing a permit to David Wolf induced Wolf to place fill in Lot 5 in violation of the WCA. Defendant requests this Court dismiss this complaint due to the County's inducment.

The Defendant has no power to charge the government with criminal acts. Clearly, this gives the State inequitable power over the Defendant. The Defendant respectfully requests the Court dismiss these charges given the legislative and administrative actions and representations made by governmental personnel which Plaintiff and others have relied on.

ISSUE

The Restoration Order is an arbitrary and unreasonable decision given the fact the Defendant did not place any of the fill the DNR has ordered removed.

The restoration order in the instant action is arbitrary and unreasonable given that Defendant did not place the fill and culvert in Lot 5 the State has ordered him to remove. In fact, the Defendant did not own Lot 5 when the fill was placed. Further, some of this fill was placed in land owned by Lake of the Woods County i.e. the ditch and the placement of the culvert and fill was done at the

direction of Lake of the Woods County given the placement was on LOW's property.

The allegation for this criminal prosecution by the State of Minnesota stems from a restoration order issued to Defendant to restore Lot 5 of 'Sunny Beach' dated November 2, 2001 and executed by James DeVault, directing Defendant to:

> Remove all gravel and other fill material placed in the lot, as well as the approach and culvert, and deposit it in an upland location. After removal of the fill, the area will be leveled off even with the natural ground level. Vegetation will be allowed to re-establish naturally.

The Defendant did not own Lot 5 when the 'gravel and other fill material' and 'approach and culvert' was placed in Lot 5. Defendant had sold 13 of the 14 lots following final approval of the plat. David Wolf owned the property at the time the fill was placed on Lot 5.

The State is in all reality attempting to charge the Defendant with a 'crime' of another. The basis of the allegation must lie on an administrative conclusion the Defendant violated the Wetland Conservation Act. This conclusion is completely false. The Defendant did not place the fill in Lot 5, the State has absolutely no evidence the Defendant placed fill in Lot 5 of Sunny Beach and it is not expected the State will attempt to make such an allegation.

The State is attempting to create liability on the Defendant for a 'crime' of another. Liability for crimes of another is governed under 609.05 which states:

> Subdivision 1. A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

There is absolutely no evidence the Defendant aided, advised, hired, counseled or conspired with another to violate the WCA. Lake of the Woods County, however, did aid in the violation of laws by its filling activities and permitting illegal fill. There is no doubt the Wolfs actions were

directed by Lake of the Woods County. (See Exhibit 1 previously submitted) The State's basis for the restoration order is flawed and Defendant respectfully requests this Court dismiss the formal complaint.

CONCLUSION

This criminal case is yet another chapter in an ever evolving struggle governmental agencies attempting to cooperate with one another with an end result to be the enforcing agencies are turning a blind eye to the wrongful acts of other fellow agencies.

This is to say nothing of the bungled administration of this residential subdivision within onerous wetland regulations even the administrators themselves have claimed are impossible.(See Exhibit 19 attached hereto) This an a lone person attempting to protect property rights against numerous local, state and federal agencies focused on 'cooperation'.

It is indisputable property rights have been one of the trinity of fundamental values that has defined our Nation's commitment to the integrity of the person since its founding. The other two pillars are, of course, liberty and life. As the Supreme Court has stated, 'if . . . the uses of private property were subject to unbridled, uncompensated qualification under the police power, 'the natural tendency of human nature [would be] to extend the qualification more and more until at last private property disappear[ed]." Lucas 505 U.S. at 1014 (quoting Mahon., 260 U.S. at 415).

The County and administrative officials are themselves to blame for any alleged wetland violation. Defendant cannot be held criminally liable for actions done by another person at the direction of local government officials. It is clear that Lake of the Woods County was once behind this development, supporting Mr. Bailey's endeavor of developing this property and representing this

property was developable. The local legislative history of this plat and zoning change was well developed.

The Defendant has been provided assurances by administrators only to have those same administrators turn around and allege he is a 'wetland violator'. Defendant respectfully requests this Court dismiss this case under the above analysis.

Respectfully submitted,

ALAN B. FISH, P.A.

Dated: October 11, 2005

Alan B. Fish, #238120
Rita Fish-Whitlock, #0310785
109 Second Street Northeast
Roseau, Minnesota 56751
(218) 463-2088
Attorneys for Defendant

\\Rita\c\Clients\BAILEY.X05\MEMORANDUM.075.wpd