**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **GARY BAILEY,** | |
| **Plaintiff,** | **Civil No. 02-1078L** |
| **v.** | **Honorable Victor J. Wolski** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**BASED UPON BACKGROUND PRINCIPLES OF STATE LAW**

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

JAMES D. GETTE
Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P.O. Box 663
Washington, DC 20044-0663
Tel: 202-305-1461
Fax: 202-305-0267
Email: james.gette@usdoj.gov

Of Counsel:
Steven P. Adamski
Deputy District Counsel
U.S. Army Corps of Engineers
St. Paul District
190 East 5th Street, Suite 401
St. Paul, Minnesota 55101

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 3

I. Plaintiff Cannot Meet His Burden of Proving that, Under Minnesota Law, He Has a Property Interest in Placing Residential Development in Sunny Beach Subdivision . . . . . . . . . . 3

A. Plaintiff is Collaterally Estopped from Arguing that Residential Development Is Allowed in the Sunny Beach Subdivision . . . . . . . . . . 4

B. Plaintiff Provides No Admissible Evidence that an Alternative Septic System is Feasible and Has Designated No Expert in this Case who Could Provide Such Evidence . . . . . . . . . . 9

II. Plaintiff's Complaint Alleges that the Valuable Property Right that Has Been Taken from Him is the Right to Pursue Residential Development on the Property . . . . . . . . . . 13

III. Plaintiff Incorrectly Suggests that County Zoning Approval Is the Only Basis for Determining Whether the Property Could Be Developed for Residential Use . . . . . . . . . . 15

IV. There Are No Disputed Material Facts to Preclude Defendant's Motion for Summary Judgment . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

Am. Pelagic Fishing Co. v. United States,
379 F.3d 1363 (Fed. Cir. 2004), cert. denied 545 U.S. 1139 (2005) . . . . . . . . . . . . . . . . . . 3

Anderson v. Liberty Lobby, Inc.,
477 U.S. 249, 106 S.Ct. 2505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Astoria Fed. Sav. & Loan Ass'n v. Solimino,
501 U.S. 104 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,
853 F.2d 1557 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C.W. Over & Sons, Inc. v. United States,
44 Fed. Cl. 18 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Celotex Corp. V. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cloutier v. United States,
19 Cl. Ct. 326 (1990), aff'd mem., 937 F.2d 622 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . 12

Conti v. United States,
291 F.3d 1334 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ford Motor Co. v. United States,
157 F.3d 849 (Fed.Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Graybill v. U.S. Postal Serv.,
782 F.2d 1567 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Kremer v. Chem. Constr. Corp.,
456 U.S. 461 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Lakewood Assocs. v. United States,
45 Fed. Cl. 320 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

MGA, Inc. v. General Motors Corp.,
827 F.2d 729 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Marrese v. Am. Acad. Of Orthopaedic Surgeons,

470 U.S. 373 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Migra v. Warren City Dist. Bd. of Ed.,
465 U.S. 75 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Montana v. United States,
440 U.S. 147 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

United States v. Utah Constr. and Mining, Co.,
384 U.S. 394 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATE CASES**

Aufderhar v. Data Dispatch, Inc.,
452 N.W.2d 648 (Minn. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Bahr v. City of Litchfield,
420 N.W.2d 604 (Minn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

City of Rochester v. Peoples Coop. Power Ass'n, Inc.,
505 N.W.2d 621 (Minn. Ct. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Falgren v. State Bd. of Teaching,
545 N.W.2d 901 (Minn. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Graham v. Special Sch. Dist. No. 1,
472 N.W.2d 114 (Minn. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

Minneapolis Gas Co. v. Dahle,
171 N.W.2d 813 (Minn. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**FEDERAL STATUTES**

28 U.S.C. § 1738 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

33 U.S.C. § 1341(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**STATE STATUTES**

Minn. Stat. § 115.01 . . . . . . . . . . 16

Minn. Stat. § 115.03 . . . . . . . . . . 16

Minn. Stat. § 14.63 . . . . . . . . . . 8

Minn. Stat. § 14.69 (2002) . . . . . . . . . . 8

**FEDERAL RULES**

RCFC 56(h)(1) . . . . . . . . . . 17

RCFC 56(h)(2) . . . . . . . . . . 17

**STATE RULES**

Minn. Rules ch. 7080 . . . . . . . . . . 11

**FEDERAL REGULATIONS**

33 C.F.R. §§ 320.4(d) . . . . . . . . . . 18

**STATE REGULATIONS**

Minn. R. 7001.0140 . . . . . . . . . . 7

Minn. R. 7080.0060 . . . . . . . . . . 9

Minn. R. 7080.0170 . . . . . . . . . . 15

Minn. R. 7080.0305 . . . . . . . . . . 10, 13

## INTRODUCTION

Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") is noteworthy because it identifies one fundamental agreement of the parties. In his Opposition, Plaintiff warns against the federal government stomping on the "[s]tates rights to decide issues of land use." Pl.'s Opp'n at 31 (Dkt. 93). Plaintiff is, in this one instance, correct: a determination as to whether this property can be developed without constituting a nuisance under state law should be left to the state. And yet, having recognized this fundamental fact, Plaintiff proceeds to argue several baseless reasons why the state's determination should be ignored. The state has considered whether residential development in the Sunny Beach subdivision would constitute a risk to health or safety and has determined that it would. Given that Plaintiff's property right does not include the right to act in a manner that results in a state-defined nuisance, there can be no taking. That should be the end of the analysis and the end of this case.

Plaintiff's arguments that this Court should ignore the findings of the State of Minnesota are flawed for numerous reasons.[1/] First, the decision of the Minnesota Pollution Control Agency ("MPCA") – that residential development of the Sunny Beach subdivision would violate state water quality laws and would create a nuisance – is definitive. Plaintiff, in fact, is collaterally estopped from arguing against the MPCA's decision. Second, even assuming that this Court can

[1/]In several instances Plaintiff incorrectly characterizes the issue before the Court as one related to investment-backed expectations (Pl.'s Opp'n at 12-13, 29-30) and incorrectly jumps beyond the issue of whether Plaintiff possesses a compensable property interest to present an analysis of whether a regulatory taking occurred by applying the Penn Central factors (Pl.'s Opp'n at 27-31). Defendant disagrees with Plaintiff's arguments regarding these issues. Nonetheless, because none of the issues are relevant to the threshold issue currently before the Court – whether Plaintiff possesses a compensable property interest – the United States does not address them in this reply. Indeed, to achieve its goal of a coherent reply, Defendant has found it necessary to discount random claims and assertions that, while incorrect, are irrelevant or inconsequential to the Court's consideration of the instant motion. If, however, the Court feels that in doing so Defendant has failed to respond to a meaningful allegation, Defendant stands ready to address all issues at oral argument or in response to specific written inquiries from the Court.

look behind the MPCA's decision, which it cannot, Plaintiff has failed to produce any evidence of an alternative septic system that could be approved for this property. Instead, Plaintiff attempts to rely upon generalized statements and conclusions which are insufficient to withstand a well-pled motion for summary judgment. Moreover, Plaintiff never requested that the MPCA consider some alternative septic system despite having been given several opportunities to provide alternative approaches for consideration by the MPCA. In short, Plaintiff should be precluded from re-writing a duly issued decision of the State of Minnesota, particularly having presented no evidence to support such a reversal.

In his Opposition, Plaintiff also mis-characterizes the property interest that is central to the resolution of this case. While the Section 404 permit at issue addressed the question of whether Plaintiff could place fill in wetlands, the background principle of state law at issue addresses the nuisance that would be created by residential development on the property. As Plaintiff himself admits, his ultimate development goal for the Sunny Beach subdivision is the construction of vacation homes on the shore of Lake of the Woods. Pl.'s Opp'n at 10 ("The value of the property as 'residential' is a cognizable property interest.") (emphasis added). The placement of fill, while critical to the Section 404 determination, played no role in the MPCA's determination that residential development would create a nuisance. Thus, Plaintiff has created a true red herring by repeatedly addressing the issue of fill rather than the inability to place homes on the property under Minnesota law.

Plaintiff's Opposition also wrongly suggests that the decision of the MPCA should be ignored because the local governmental authority platted the Sunny Beach subdivision. Nothing in the law of the State of Minnesota – the law which determines whether Plaintiff's property interest is broad enough to encompass his proposed development – supports the notion that a

platting determination by a local governmental authority somehow trumps all other regulatory determinations of the state. Moreover, none of the case law cited by Plaintiff, which addresses the issue of platting, suggests that the mere act of platting magically nullifies all other state law.

Finally, Plaintiff incorrectly suggests that disputes between the parties regarding material issues of fact preclude the entry of summary judgment in this case. As set forth in detail below, the facts sited by Plaintiff are either irrelevant to the determination of whether Plaintiff's property interest is broad enough to encompass residential development or are unsupported by any admissible evidence. As such, these alleged facts may not stand in the way of summary adjudication.

The bottom line in this case is clear. Even if the United States Army Corps of Engineers ("Corps of Engineers") reversed its position and granted a Section 404 permit to Mr. Bailey, he still would not be entitled to place residential homes in the Sunny Beach subdivision. Even if the Corps of Engineers were to issue a provisional Section 404 permit at Plaintiff's brief suggests, the proposed residential development lacks the state water quality certification required by Minnesota law because the plaintiff's development proposal does not comply with the State's sewage treatment and water quality requirements. As such, Plaintiff did not possess a compensable property interest in this case and there can be no taking.

## ARGUMENT

### I. Plaintiff Cannot Meet His Burden of Proving that, Under Minnesota Law, He Has a Property Interest in Placing Residential Development in Sunny Beach Subdivision

Plaintiff bears the burden of proving the existence of a compensable property interest. See Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004), cert. denied 545 U.S. 1139 (2005); Conti v. United States, 291 F.3d 1334, 1339 (Fed. Cir. 2002) ("[I]f a

claimant fails to demonstrate that the interest allegedly taken constituted a property interest under the Fifth Amendment, a court need not even consider whether the government regulation was a taking under the analysis set forth in Penn Central.")(emphasis added). As set forth in detail in Defendant's opening brief, in this case, the extent of Plaintiff's property interest is defined by reference to background principles of state law. See Defendant's Motion for Summary Judgment Based Upon Background Principles of State Law ("Def.'s MSJ") at 14-18. Thus, the burden here is on Plaintiff to demonstrate that a development plan, that is acceptable under Minnesota law, has been foreclosed by the Corps of Engineers' denial of Plaintiff's after-the-fact permit application. This Plaintiff cannot do. First and foremost, this issue has already been decided by the State of Minnesota and that decision may not be collaterally attacked here.

A. Plaintiff is Collaterally Estopped from Arguing that Residential Development Is Allowed in the Sunny Beach Subdivision

It is a bed-rock principle that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979). Collateral estoppel, also referred to as issue preclusion, "operate[s] to prevent the relitigation of a claim or issue that has already had its day in court." Lakewood Assocs. v. United States, 45 Fed. Cl. 320, 335 (1999). Simply put, "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana, 440 U.S. at 153-54.

The "Full Faith and Credit Clause of the Federal Constitution, as implemented by 28

U.S.C. § 1738, requires that state court judgments be given the same preclusive effect in later federal actions as they would be given under the laws of the state in which the judgments were rendered." Graybill v. U.S. Postal Serv., 782 F.2d 1567, 1571 (Fed. Cir. 1986) (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373 (1985); Migra v. Warren City Dist. Bd. of Ed., 465 U.S. 75 (1984); and Kremer v. Chem. Constr. Corp., 456 U.S. 461 (1982)); see also MGA, Inc. v. General Motors Corp., 827 F.2d 729, 732 (Fed. Cir. 1987). Moreover, claim preclusion and issue preclusion apply not only to decisions of courts, but they apply equally to determinations of administrative agencies when acting, as here, in a judicial capacity. See Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107-08 (1991) ("The principle [of collateral estoppel] holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, . . . which acts in a judicial capacity.") (citation omitted); United States v. Utah Constr. and Mining, Co., 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").

Federal courts will apply the preclusion law of the state in which the prior decision was rendered. MGA, Inc., 827 F.2d at 732 ("The full faith and credit statute does not permit federal courts to employ their own rules [of preclusion] in determining the effects of state judgments."). Moreover, even where the federal court may not agree with the result reached by the state court, to invoke principles of preclusion, "[f]inality, not correctness is the key." Id. at 733.

Plaintiff cannot collaterally attack the MPCA's decision in this inverse condemnation action because under Minnesota law, matters determined in an administrative agency's certification process, from which no appeal was taken, cannot be collaterally attacked in a later

action. Minneapolis Gas Co. v. Dahle, 171 N.W.2d 813, 815 (Minn. 1969); see also City of Rochester v. Peoples Coop. Power Ass'n, Inc., 505 N.W.2d 621, 624 (Minn. Ct. App. 1993) (collateral attack on underlying annexation decision is not permitted in an eminent domain proceeding).

Thus, the issues addressed in the MPCA's final decision can be conclusively applied in resolving the current case because Plaintiff is precluded from relitigating those issues under the doctrine of collateral estoppel. Under Minnesota law, collateral estoppel applies to administrative decisions when made in a quasi-judicial capacity. Graham v. Special Sch. Dist. No. 1, 472 N.W.2d 114, 115-16 (Minn. 1991); Falgren v. State Bd. of Teaching, 545 N.W.2d 901, 905 (Minn. 1996); see also Aufderhar v. Data Dispatch, Inc., 452 N.W.2d 648, 650 (Minn. 1990). Minnesota courts apply the following five factors when determining whether collateral estoppel applies:

1. The issue to be precluded must be the same as the issue raised in the prior agency adjudication;

2. The issue must have been necessary for the agency adjudication and properly before the agency;

3. The agency determination must be a final adjudication;

4. The estopped must have been a party or in privity with a party to the agency determination; and

5. The estopped must have been given a full and fair opportunity to be heard on the adjudicated issue.

Graham, 472 N.W.2d at 116. All of these collateral estoppel requirements are met here.

The issue that Plaintiff attempts to re-litigate here is identical to the issues resolved by the MPCA: whether residential development in the Sunny Beach subdivision would create a nuisance and be contrary to Minnesota water quality regulations because the land cannot safely

sustain appropriate septic systems. Commissioner's Order at ¶ 15 (Ex. L to Defendant's Motion for Summary Judgment ("Def.'s MSJ")) ("The [MPCA] has proven, by a preponderance of the evidence, that the proposed Sunny Beach project endangers human health and the environment and that the danger cannot be eliminated by modifying the Section 401 certification. In particular, sewage is likely to be discharged without adequate treatment."). In short, through the contested case hearing, the MPCA determined that water quality standards would be violated, that ISTS rules would be violated, and that nuisances would be created if residential development was allowed to proceed in the Sunny Beach subdivision.[2/]

The second Graham factor is also met because, as identified in Minn. R. 7001.0140, subp. 2.D., in ruling upon a certification determination, the MPCA must consider whether "the permitted facility or activity endangers human health or the environment and that the danger cannot be removed by a modification of the conditions of the permit." Thus, the issue, which must be addressed by this Court in applying background principles of state law, was both cental and necessary to the adjudication of the MPCA's revocation of the water quality certification and, by statute, was properly before the MPCA.

In addition, the remaining Graham factors are met because Plaintiff was a party to the MPCA proceeding, was represented by counsel, and had a full and complete opportunity to produce evidence, present witnesses, and examine the state's witnesses. The hearing was conducted by an ALJ in accordance with the state's hearing requirements and MPCA's final decision was subject to judicial review in the Minnesota state courts. Commissioner's Order at

[2/]The Commissioner also determined that "[MPCA] has demonstrated, by a preponderance of the evidence that Bailey has failed to disclose fully all facts relevant to the [proposed] activity." Commissioner's Order at ¶ 12.

p. 6 (Ex. L to Def.'s MSJ) ("This Order may be appealed to the Minnesota Court of Appeals in the manner provided in Minn. Stat. § 14.63 to Minn. Stat. § 14.69 (2002) . . . ."). Indeed, as Minnesota state courts have held, contested case hearings are quasi-judicial proceedings subject to judicial review in the Court of Appeals of the State of Minnesota, which by definition meet the third and fifth Graham factors. See Graham, 472 N.W.2d at 116; Bahr v. City of Litchfield, 420 N.W.2d 604, 607 (Minn. 1988) (contested case hearings are quasi-judicial proceedings); Minn. Stat. § 14.63 (judicial review of contested case hearings may be taken to the Court of Appeals of the State of Minnesota).

Given that the issue of whether residential construction in the Sunny Beach subdivision would violate Minnesota water quality standards and would constitute a nuisance has been conclusively determined by the MPCA in a quasi-judicial forum, and could have been appealed to the Minnesota state courts, Plaintiff cannot collaterally attack those determinations in this case. Instead, this Court must apply the appropriate deference to the decision of the MPCA and similarly rule that residential construction in the Sunny Beach subdivision would constitute a nuisance and be in violation of Minnesota water quality standards. For all that Plaintiff argues, he never once refutes the simple fact that the MPCA has denied Plaintiff the state permit necessary to develop the property for residential use.[3/] This fact, in itself, requires that the United States' Motion for Summary Judgment be granted.

---

[3/]Plaintiff also argues that because the Corps of Engineers' denial of the Section 404 permit application was not based upon the same reasoning used by the MPCA – that sewers are prohibited on the property – the impact of the 404 denial and the MPCA's refusal to certify the property for septic systems cannot be co-terminus. Pl.'s Opp'n at 23-24. This is simply wrong. Just because two decisions are based upon different reasoning does not mean that they will not have the same impact. Moreover, whether the denial of the Section 404 permit results in an identical outcome is of no moment. The issue under a background principles analysis is whether state law prohibits the use of the property sought by Plaintiff, regardless of any decision made by Defendant. If it does, then the owner possesses no compensable property right to pursue that use.

B. Plaintiff Provides No Admissible Evidence that an Alternative Septic System is Feasible and Has Designated No Expert in this Case who Could Provide Such Evidence

Even if this Court could re-consider the MPCA's determination, which it cannot,[4/] Plaintiff has failed to offer any admissible evidence that an alternative septic design is feasible or could receive a state water quality certification. As an initial matter, it is worth noting that Plaintiff does not dispute, as concluded by the MPCA, that standard mound style septic systems do not meet the state water quality and septic systems standards. Moreover, sewage treatment is required for dwellings in the state of Minnesota. Minn. R. 7080.0060. Given that these facts cannot be disputed, the burden is on Plaintiff to demonstrate that some alternative septic system that would allow for residential development of these lots under Minnesota state law is reasonably feasible. Plaintiff has failed to offer any admissible evidence to carry this burden.

Instead of providing admissible evidence of alternative systems, Plaintiff simply states that there are three theoretical alternative mechanisms under which the state could potentially approve construction of septic systems. See Pl.'s Opp'n at 11. These theoretical alternatives must fail.

First, there is no evidence that the necessary pre-requisites are in place to allow for the application of the alternative mechanisms in this case. The first theoretical alternative is that the local government has assigned "experimental status" to the project at issue. Plaintiff, however, offers no evidence that Lake of the Woods County, the local governmental unit with jurisdiction over this property, has assigned "experimental status" to development in the Sunny Beach subdivision. Plaintiff sites to no evidence because there is none.

---

[4/]The Court of Federal Claims will not scrutinize the decisions of another tribunal. See e.g., Allustiarte v. United States, 256 F.3d 1349, 1351-52 (Fed. Cir. 2001).

The second theoretical alternative is that the local jurisdiction has approved "alternative standards," which must be approved by the MPCA, that would apply to the Sunny Beach subdivision. There is no evidence, and Plaintiff has submitted no evidence, that Lake of the Woods County has ever submitted "alternative standards" to the MPCA for review, let alone received approval for "alternative standards" that meet the requirements of Minn. R. 7080.0305, subp. 6.

The third theoretical alternative – that the local government has "variance procedures" that would apply to the Sunny Beach subdivision – is equally unsupported given the complete lack of evidence submitted by Plaintiff. As with the other theoretical alternatives, Plaintiff offers no evidence that Lake of the Woods County has adopted "variance procedures" under Minn. R. 7080.0305, subp. 3.

Moreover, how could the County have assigned, and the MPCA considered, "experimental status," applied "alternative standards," or applied "variance procedures," when no designs or specifications were ever submitted by Plaintiff? It is undisputed that Plaintiff never requested certification from the MPCA for any of these alternative approaches and never provided evidence to the MPCA of the feasibility of these theoretical alternatives. Indeed, Plaintiff was provided an opportunity to provide such information on "alternatives" or "variances" to the MPCA but failed to do so.[5/]

Second, Plaintiff has failed to offer evidence from an expert in septic system design or

---

[5/]Specifically because of concerns over septic system issues related to the development of the Sunny Beach subdivision, the MPCA issued a request for information ("RFI") to Plaintiff. "The RFI requested that Bailey submit information demonstrating how compliance with the ISTS rules, Minn. Rules ch. 7080, would be accomplished. . . . Bailey did not respond to MPCA's RFI regarding [this] issue[]." ALJ's Report at ¶¶ 11-12 (Ex. A to Def.'s MSJ). Moreover, Plaintiff had the opportunity to appeal the findings of the MPCA to the Minnesota Court of Appeals, but ultimately never challenged those findings.

land use to refute the MPCA findings.[6] Instead, Plaintiff relies upon nothing more than an advertising circular as evidence of a viable alternative septic system. Of course, the advertising circular has not been authenticated and, without appropriate supporting expert testimony, does not represent admissible evidence in opposition to this well-pled motion for summary judgment. See Pl.'s Opp'n at 23 and Ex. 4 to Pl.'s Opp'n.[7] The deadline for Plaintiff to proffer such an expert has now passed and Plaintiff has not offered such an expert. As such, even if this Court could accept evidence to contradict the findings of the MPCA, Plaintiff is now foreclosed from proffering the expert evidence that would be necessary to address this issue.

Plaintiff would have this Court consider application of background principles of state law based upon some hypothetical and undefined septic system that was never presented to the state decision-making agency. As stated above, Plaintiff was given the opportunity to address alternative systems in the MPCA contested case hearing, but chose not to do so, despite the fact that Plaintiff admits that the MPCA repeatedly apprised him that it would consider design alternatives if he submitted any. Pl.'s Opp'n at 15. In short, Plaintiff attempts to defeat Defendant's well-pled motion for summary judgment based upon nothing more than "unknowns and uncertainties" – which constituted a fundamental basis why his request for a water quality certification was denied by the State of Minnesota in the first instance. ALJ's Report at ¶ 28 (Ex. A to Def.'s MSJ) ("Given the lack of information and uncertainty on these issues, MPCA

---

[6] The MPCA's determination, on the other hand, is based upon the detailed testimony of two experts in waste treatment and soil hydrology. See Def.'s MSJ at 8-9 and 21-23.

[7] Even if the advertising circular relied upon by Plaintiff, which was never previously produced in discovery, was admissible evidence, which it is not, it certainly does not meet the threshold of being more than merely colorable – a threshold which Plaintiff must meet to overcome a Motion for Summary Judgment. See p. 12 supra. Moreover, the MPCA has never been presented with an opportunity to consider such alternatives, and such mere speculation is not sufficient to overturn the agency's prior ruling.

determined it could not modify the existing water quality certification to address these unknowns and uncertainties, and decided that the certificate should be revoked.”).

Mere speculation is certainly not sufficient to overcome a well-pled motion for summary judgment. “[A] mere ‘metaphysical doubt’ will not prevent the granting of a summary judgment motion.” Cloutier v. United States, 19 Cl. Ct. 326, 328 (1990), aff’d mem., 937 F.2d 622 (Fed. Cir. 1991). Indeed, the evidence presented by Plaintiff, as the party opposing summary judgment, “must be more than merely colorable.” C.W. Over & Sons, Inc. v. United States, 44 Fed. Cl. 18, 22 (1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Avia Group Int’l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988) (“If the evidence [of the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted.”) (alteration in original). Moreover, Plaintiff himself admits that the ability to obtain some sort of variance from the MPCA is merely “speculative.” Pl.’s Opp’n at 11.[8/]

Accepting Plaintiff’s position here would lead to the absurd result that a state determination of nuisance would never represent a final determination, because some alternative design never once proferred to the state for consideration, might be theoretically possible. As such, state background principles could never defeat a takings claims. Here background principles define the terms of Plaintiff’s property interest. The state has spoken and has found

[8/]Instead of admissible evidence, Plaintiff relies upon statements that are not only unsupported by any citation to law or fact, but are, in fact, contrary to the express provisions of Minnesota law and the findings of the MPCA. Plaintiff states that “[n]eighbors could share sewer systems if neither had a sufficient area for two systems.” Pl.’s Opp’n at 12. Plaintiff provides no citation to state law or to expert opinion that would support such a conclusion. Indeed, the state law is to the contrary. All new residential lots since January 1996 must contain sufficient area in which to install two ISTS. ALJ’s Report at ¶ 37 (Ex. A to Def.’s MSJ); Minn. R. 7080.0305, subp. 4.F. (2001). Neither this provision, nor any other state law provision, allows for the sharing of ISTS. Rather, the law specifically requires that all residential lot have sufficient space for two separate septic systems. Id. This is exactly what the MPCA found when it denied Plaintiff’s request for a water quality certification on the property. ALJ’s Report at ¶ 37 (Ex. A to Def.’s MSJ)

that Plaintiff does not have the right to develop the property for residential use.

## II. Plaintiff's Complaint Alleges that the Valuable Property Right that Has Been Taken from Him is the Right to Pursue Residential Development on the Property

Plaintiff's Complaint is clear: he alleges that his right to recoup proceeds from the sale of Sunny Beach lots for residential development has been taken. See Complaint (Dkt. 1) at ¶¶ III, VII, and IX; see also Def.'s MSJ p. 7. In fact, Plaintiff's own brief recognizes that residential development is the property use that is at issue in addressing the impact of background principles of state law. See Pl.'s Opp'n at 6 ("Plaintiff further submits he held a right and ability to develop the property with residences given Lake of the Woods County acceptance of Plaintiff's request to zone the property for 'residential' use."); Pl.'s Opp'n at 10 ("[Plaintiff] has a right to develop habitable structures on the property located within 'Sunny Beach.'").

Despite these admissions, Plaintiff proceeds to muddy the waters in his Opposition by repeatedly suggesting that the background principle at issue is the filling of wetlands. Pl.'s Opp'n at 13-16. In fact, Plaintiff spends a substantial amount of time attempting to prove that placement of fill in a wetland is not a nuisance under Minnesota law. Id. Plaintiff has, however, done nothing more than set up a straw man and then attempt, fairly unconvincingly, to knock it down. Defendant simply does not argue, in the current motion, that placing fill in a wetland constitutes a nuisance under Minnesota law.[9] Instead, placement of septic systems on the subject property has definitively been determined to be a nuisance under state law, by the state agency specifically given the authority to make such determinations by the Minnesota legislature. It is this background principle that conclusively forecloses the property interest

[9] Defendant does not concede that the placement of fill material in a wetland could not constitute a nuisance in some instances. However, the Court need not reach this issue for purposes of Defendant's Motion.

allegedly taken here, the ability to place residential development in the sunny beach subdivision.

Plaintiff has not cited any Minnesota authority that contradicts the Minnesota statutory and case law cited by Defendant, which holds, unequivocally, that inadequate septic systems constitute an actionable nuisance under state law. See Def.'s MSJ at 18-21. Instead, Plaintiff goes back to the inconsequential assertion that placing fill in wetlands does not constitute a nuisance.

In one instance, Plaintiff finally succeeds in relating the placement of fill in the wetlands to the issue of adequate septic systems. The reference is to no avail, however, because Plaintiff's suggestion was specifically considered and rejected by the MPCA because it would still constitute a nuisance under states law and constitute a violation of state water quality standards. Plaintiff suggests that by "filling their lots with a sufficient amount of fill [the lot owners could] ensure a sewer system that is safe. . . ." See Pl.'s Opp'n at 16. This possibility was considered and specifically rejected by the MPCA. As the MPCA found, for health and safety reasons, placement of fill, regardless of the amount of fill placed, would not enable Plaintiff to install septic systems on the property because of the requirement that 12 inches of the unsaturated soil must be "natural soil." Zdon Test., CCH Tr. 63-64 (Ex. H to Def.'s MSJ); Wespetal Test., CCH Tr. 401-06 (Ex. H to Def.'s MSJ); Minn. R. 7080.0170, subp. 5.A.(2) (2007). As the MPCA experts testified at the contested case hearing, a mound can be created to provide a portion of the three feet of unsaturated soil for a mound system, but even a mound system is required to have at least 12 inches of unsaturated original or natural soil in the absorption area, and the Sunny Beach property does not provide the required 12 inches of natural soil. Id.

As stated above, the issue of whether Plaintiff had the right to place fill in these wetlands is a red herring. See Pl.'s. Opp'n. 5-6, 15-16, 20. Moreover, the placement of fill will not cure

the nuisance situation created by installation of septic systems in the Sunny Beach subdivision. Even if Plaintiff could legally place fill in these wetlands, he would still not be allowed to build homes in Sunny Beach as a result of the Minnesota standards for the installation of safe and effective septic systems.

## III. Plaintiff Incorrectly Suggests that County Zoning Approval Is the Only Basis for Determining Whether the Property Could Be Developed for Residential Use

Plaintiff incredulously suggests that, because the Sunny Beach subdivision was platted by Lake of the Woods County, no other state or local regulations apply to the property and that once issued, the plat provides Plaintiff with a blank check to develop the property as he pleases. Pl.'s Opp'n at 6-9. The Minnesota statutes and cases cited by Plaintiff do provide local governments with the authority to regulate certain aspects of land use planning and provide certain protections to developers vis-a-vis their interaction with the local governmental unit. The statutory authority to administer zoning laws, however, does not constitute the only possible source of land use regulation. Instead, as in all states, the local land use zoning restrictions are part of a broader set of standards and regulations through which the state and local authorities exercise the state's police power to protect its citizens from public nuisances or hazards, such as inadequate or malfunctioning sewer systems.

The fact that the local jurisdiction administers some land use planning elements does not foreclose the state from administering others. In this instance, along with Lake of the Woods County, the MPCA also administers applicable regulations, like the ISTS standards and the water quality certification, that are intended to ensure water quality for the residents of the state. Pursuant to the Minnesota Water Pollution Control Act, MPCA is designated as the agency responsible to regulate waste treatment. Minn. Stat. § 115.01, subd. 2 ("'Agency' means the

Minnesota Pollution Control Agency."). Moreover, the state legislature has clearly provided the authority to the MPCA to regulate septic systems within the state. Minn. Stat. § 115.03, subd. 1 ("The agency is hereby given and charged with the following powers and duties . . . (e) to adopt, issue, reissue, modify, deny, or revoke, enter into or enforce reasonable orders, permits, variances, standards, rules, schedules of compliance, and stipulation agreements, under such conditions as it may prescribe . . . for the installation or operation of disposal systems or parts thereof . . . (4) requiring the construction, installation, maintenance, and operation by any person of any disposal system or any part thereof . . . .").

None of the statutes or cases cited by Plaintiff foreclose or override the MPCA's authority to regulate ISTS or state water quality. Nor do the statutes or cases suggest that state delegation of zoning regulation to local authorities somehow provides exclusive authority to the local governmental units to regulate land use within the state.

Plaintiff mischaracterizes this issue when he claims "Defendant cites no statutory authority granted by the legislature to the MPCA with power to enforce wetland regulations." See Pl.'s Opp'n p. 8. First, the ISTS regulations administered by the MPCA, which foreclose residential development on Plaintiff's property, are not "wetland regulations." Rather, they are water quality regulations that apply to all property within the State of Minnesota, not just jurisdictional wetlands. Second, as stated above, the MPCA does, in fact, have the authority to administer and enforce water quality and septic system regulations. Third, Plaintiff, who bears the burden, provides no citation to any authority that invalidates the water quality regulations or the ISTS regulations administered by the MPCA. Plaintiff has again set up a straw man by focusing only on "wetland regulation" instead of the regulatory authorities that are truly at issue in this case. When one focuses on the correct state background principles, one finds that (1) the

MPCA clearly has the authority to regulate septic systems and water quality throughout Minnesota; (2) the MPCA has specifically addressed whether septic systems could be safely and effectively installed in the Sunny Beach subdivision; and (3) the MPCA has determined that septic systems and, thus, residential development would constitute a nuisance under Minnesota law if placed in the Sunny Beach subdivision.

## IV. There Are No Disputed Material Facts to Preclude Defendant's Motion for Summary Judgment

Plaintiff alleges that there are material facts which are in dispute and thus preclude the entry of summary judgment here.[10/] In each instance the fact is, in reality, either incorrect, not in dispute, not material, or neither disputed nor material.

First, Plaintiff contends that the Corps was not required to deny Plaintiff's permit application under Section 404 of the Clean Water Act simply because the State of Minnesota revoked its water quality certification. Pl.'s Opp'n at 16-17. Plaintiff's contention is both incorrect as a matter of law, and irrelevant as to whether Minnesota's water quality standards and independent sewage treatment standards prohibited the development proposed by Plaintiff.

Section 401 of the Clean Water Act prohibits the Corps from issuing a CWA permit unless the State has issued a certification that the project complies with the state's water quality standards or waives its right to do so. 33 U.S.C. § 1341(a) ("No license or permit shall be granted until the certification required by this section has been obtained or has been waived as provided in the preceding sentence."); see also 33 C.F.R. §§ 320.4(d), 325.2(b)(1)(ii). Plaintiff

[10/] The Court has undoubtedly noted that Plaintiff, in contravention of RCFC 56(h)(2), has not filed a response to Defendant's Proposed Findings of Uncontroverted Fact Pursuant to RCFC 56(h)(1) (Dkt. 89). The Court should, therefore, deem the proposed findings admitted for purposes of adjudicating the current motion.

does not and could not contend that a valid state water quality certification existed or that Minnesota waived its certification requirements.

Even if Plaintiff's contention – that the Corps of Engineers was not constrained by the State's revocation of its water quality certification – had validity, it is irrelevant as to whether the Plaintiff's proposal complied with the State's sewage treatment and water quality requirements. Regardless of the Corps of Engineers' permit decision, Plaintiff's proposed development fails to comply with state law.

Second, Plaintiff argues that the MPCA did not make a final determination whether septic systems would be allowed on individual lots. Pl.'s Opp'n. at 17-18. This, of course, is not a statement of fact, but a legal argument. In short, Plaintiff attempts to reargue his failed administrative challenge to the State's revocation of its water quality certification,[11/] all he really contends is that there may be some theoretical development, using some other plan and some other speculative wastewater treatment design that could theoretically be authorized under state law. The United States does not dispute the metaphysical possibility that a more limited and carefully designed development might well result in an economically viable use for the property that complies with both state and federal law. To borrow the Plaintiff's phraseology, the crux of the Government's argument is that the project actually proposed by Plaintiff – and fully litigated in the contested case hearing where Plaintiff challenged the State's revocation of water quality certification – fails to comply with state sewage and water quality requirements.

[11/] While Plaintiff here contends that the State's finding that the development proposed would constitute a nuisance is "speculation," Plaintiff fails to note that he declined to seek judicial review of that finding. After losing his administrative challenge to the State's revocation of its water quality certification, Plaintiff chose not to avail himself of the opportunities for judicial review available to him in state court under state law.

Third, Plaintiff asserts that the MPCA did not have a requirement that mound septic systems include 12 inches of natural soil when Plaintiff's permit application was denied by the Corps of Engineers. Again, this fact is not material because Plaintiff did not challenge the findings of the MPCA and is now estopped from doing so.[12/] Immaterial facts cannot form the basis for a denial of an otherwise well-pled motion for summary judgment.

Fourth, Plaintiff disputes the testimony offered at the MPCA contested case hearing by experts in the fields of water hydrology and septic systems, but offers no competent evidence that suggests that a material fact (or any fact whatsoever) is in dispute. The only evidence proffered is the self-serving affidavit of Gary Bailey. The affidavit, however, is riddled with hearsay, and contains nothing more than Plaintiff's unsupported opinions as to why the MPCA denied his water quality certification and Plaintiff's conclusions of law as to why he believes that his takings case has merit. Completely absent from Plaintiff's affidavit is any evidence of his expertise in sewage treatment or water quality. Even more glaring is the complete absence of any evidence contradicting the underlying state law principles demonstrated by Defendant in its Motion for Summary Judgment. A party opposing a properly supported motion for summary judgment must offer some competent, admissible evidence to create a genuine issue of material

[12/] Even if relevant, however, Plaintiff's assertions are contrary to the evidence he cites. First, he suggests that the natural soil requirement is not in the current version of the Minnesota Rules. This is simply incorrect. The requirement was included at section 7080.0170 subp. V.A.2 until early 2008 when the specific requirement was recodified in section 7080.2220 addressing the requirements for mound systems. The current subpart 2.A says "[t]he upper 12 inches of the absorption area must also be above the periodically saturated soil or bedrock." Moreover, Plaintiff relies upon the testimony of Mark Westpetal to argue that the requirement was not in place when the Section 404 permit was denied. The relevance of the MPCA rules at the time of the Section 404 denial is unclear. Nonetheless, a clear reading of Mr. Westpetal's testimony is that the natural soil requirement was always part of the MPCA's requirements for a water quality certification. Even though the specific provision was accidently removed from the regulations for a period of time, this requirement remained part of the MPCA's internal guidelines, which were widely publicized and were used to make water quality certification decisions. Moreover, the specific natural soil requirement was also subsumed within other provisions of the water quality regulations including Minn. R. 7050.0210 subp. 3 and 7080.0065 subp. 4.

fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed.Cir. 1998). As noted above, the only evidence proffered by Plaintiff is not evidence at all, but rather a conglomeration of non-expert opinions on matters where expertise is required.

**CONCLUSION**

Plaintiff does not have a compensable property right to develop the Sunny Beach subdivision for residential purposes. Such development is proscribed by background principles of state law. Thus, Defendant respectfully requests, pursuant to Rule 56 of the Rules of the Court of Federal Claims, that its motion for summary judgment be granted and that Plaintiff's Complaint be dismissed in its entirety with prejudice.

RONALD J. TENPAS
Assistant Attorney General
Environment & Natural Resources Division

*/s/ James D. Gette*

JAMES D. GETTE
Natural Resources Section
Environment & Natural Resources Division
Department of Justice
P.O. Box 663
Washington, DC 20044-0663
Tel: 202-305-1461
Fax: 202-305-0267
Email: james.gette@usdoj.gov

Of Counsel:

Steven P. Adamski
Deputy District Counsel
U.S. Army Corps of Engineers
St. Paul District
190 East 5th Street, Suite 401
St. Paul, Minnesota 55101